ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEINER HEALTH PRODUCTS INC., et al.,[1] | ) Case No. 08-10446 (KJC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Re: Docket No. 15** |

### EMERGENCY INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING LIMITED USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION AGENTS AND PREPETITION LENDERS AND (V) SCHEDULING A FINAL HEARING ON THE DEBTORS' MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS

This matter is before the Court on the motion filed by Leiner Health Products Inc. and the other debtors and debtors-in-possession (collectively, the "Debtors") in the above captioned chapter 11 cases (collectively, the "Cases") dated March 10, 2008 (the "Motion") requesting entry of an Order[2]:

(1)    for immediate authorization and approval, pursuant to sections 105, 361, 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtors to obtain postpetition financing the "DIP Facility"), and for the Guarantors to guarantee the payment of each Debtor's obligations thereunder and under this Order, including,

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Leiner Health Products Inc. (1709), LHP Holding Corp. (7947), Leiner Health Products, LLC (6283) and Leiner Health Services Corp. (4464). The address for all Debtors is: 901 E. 233rd Street, Carson, California 90745.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Agreement.

without limitation, principal, accrued interest, unpaid fees and expenses, and all other amounts due from time to time under the documents referred to below (collectively, the "Postpetition Indebtedness"), from UBS AG Stamford Branch ("UBS AG") as Administrative Agent (the "DIP Administrative Agent"), UBS AG as collateral agent (the "DIP Collateral Agent", together with the DIP Administrative Agent, collectively the "DIP Facility Agent"), UBS AG as Issuing Bank and UBS Loan Finance LLC as Swingline Lender and a lender, (together with the other lenders, each in their lender capacity, collectively, the "DIP Facility Lenders") to (A) fund, among other things, ongoing working capital, general corporate and other financing needs of the Debtors, including without limitation certain fees and expenses of professionals payable by the Debtors, (B) pay certain transaction fees, and other costs and expenses of administration of the Cases, (C) pay the Prepetition Agents and Prepetition Lenders (each as defined below) Adequate Protection (as defined below), and (D) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Facility Agent and the DIP Facility Lenders under the DIP Facility and the other DIP Facility Documents (as defined below);

(2)     authorizing the Debtors to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(3)     requesting, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the financing under the DIP Facility:

a.     have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or

2

attachment, which allowed super-priority claims of the DIP Facility Agent and DIP Facility Lenders shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, except for the Carve-Out (as defined below), as provided for herein (the "DIP Facility Superpriority Claim"); and

b.       be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests in, and liens upon, all prepetition and postpetition assets of the Debtors and Guarantors, whether now existing or hereafter acquired and a junior priority security interest in all assets otherwise encumbered by Permitted Prior Liens (collectively, the "DIP Facility Liens"), and to the extent not otherwise included, all proceeds, tort claims, insurance claims, and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing (collectively, the "Collateral"), as provided for by section 364(c) and (d) of the Bankruptcy Code, but specifically (i) excluding avoidance actions under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions") until entry of the Final Order and at that time subject to recovery only in a liquidation of the Collateral and as the last Collateral liquidated by the DIP Facility Agent, and being subject to (ii) the Carve-Out as provided for herein and (iii) Permitted Prior Liens[3] in the Collateral (other than the liens, claims and interests of the Prepetition Secured Parties and any Replacement Liens).

(4)       seeking the Court's authorization pursuant to sections 361(a), 363(c), and 364(d)(1) of the Bankruptcy Code to authorize limited use of Cash Collateral (as

---

[3]    Permitted Prior Liens shall mean those Liens (a) identified in schedule 6.02(c) to the DIP Facility Agreement and (b) constitute Permitted Liens that exist as of the Commencement Date and are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code.

RLF1-3262004-1

defined under section 363 of the Bankruptcy Code) and provide adequate protection to the Prepetition Agents and the Prepetition Lenders on account of their claims under the Prepetition Credit Facility (as defined below), because such parties liens and claims are to be "primed" and treated as junior in all respects to the financing provided herein pursuant and subject to the terms hereof and the Final Order (as defined below) and as adequate protection for the limited use of Cash Collateral;

(5)    requesting, pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held for this Court to consider entry of an interim order (the "Order") authorizing the Debtors, on an interim basis, to use Cash Collateral and obtain under the DIP Facility from the DIP Facility Agent and DIP Facility Lenders the principal amount of up to $20 million pursuant to the terms of the DIP Facility Agreement (as defined below); and

(6)    requesting, pursuant to Bankruptcy Rule 4001, that a final hearing (the "Final Hearing") be held for this Court to consider entry of an order approving (a) the DIP Facility as set forth in the DIP Facility Agreement in the aggregate principal amount of up to $74 million (the "DIP Facility Amount"), and (b) the grant of adequate protection to the Prepetition Agents and Prepetition Lenders (collectively, the "Prepetition Secured Parties") all on a final basis (the "Final Order"), as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the Interim Hearing having been provided by the Debtors as set forth in paragraph H below, and the Interim Hearing having been held on March 12, 2008, and upon consideration of all the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved are hereby overruled;

4

and upon the record made by the Debtors at the Interim Hearing and the Declaration of Robert K. Reynolds, President, Chief Executive Officer and Director of Leiner Health Products Inc., in Support of First Day Pleadings, and the Declaration of Andrew Morrow, Vice President, Houlihan Lokey Howard Zukin Capital, Inc. in Support of the Motion, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.     On March 10, 2008 (the "Commencement Date"), the Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.     Concurrently with the filing of the Motion, the Debtors filed a motion seeking joint administration of the Chapter 11 Cases. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. No committees have been appointed or designated.

C.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     Without prejudice to the rights of any non-debtor party in interest as provided in paragraph 6 herein, the Debtors acknowledge, agree and stipulation that:

(i)     Pursuant to that certain Credit Agreement dated as of May 27, 2004 by and among Leiner Health Products Inc. and certain of its subsidiaries, UBS AG, Stamford Branch, as collateral agent and as administrative agent (collectively, the "Prepetition Agents") and the financial institutions from time to time parties thereto (collectively, the "Prepetition

5

Lenders") (as amended, supplemented, waived and otherwise modified from time to time, the "Prepetition Credit Agreement" and together with all "Loan Documents" (as defined in the Prepetition Credit Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Financing Documents"), the Prepetition Lenders made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of the Debtors from time to time;

        (ii)     Pursuant to the Prepetition Financing Documents, the Debtors were, as of the Commencement Date, jointly and severally indebted to the Prepetition Agents and the Prepetition Lenders on account of the Prepetition Indebtedness (as defined below) exclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate principal amount of $280 million (which consists of approximately $49,524,446 in principal amount of prepetition revolving loans, inclusive of approximately $4,987,301 in issued and outstanding letters of credit and $231,600,000 in principal amount of prepetition term loans). For purposes of this Order, the term "Prepetition Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Financing Documents (including, without limitation, all Obligations as defined in the Prepetition Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Prepetition Financing Documents), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other Obligations outstanding thereunder;

6

(iii)   Pursuant to the Prepetition Financing Documents, the Debtors granted to and/or for the benefit of the Prepetition Agents and Prepetition Lenders first priority and continuing pledges, liens and security interests (the "Prepetition Liens") to secure the Prepetition Indebtedness and any guarantees thereof, in and upon substantially all of the Debtors' property and assets, whether real or personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, and all the proceeds, products, offspring, rents and profits thereof; and

(iv)   As of the Commencement Date and immediately prior to giving effect to this Order, (a) the Prepetition Financing Documents are valid and binding agreements and obligations of the Debtors, and the Prepetition Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and Liens, subject only to the Liens permitted under the Prepetition Credit Agreement, but only to the extent such permitted senior Liens are valid, enforceable, non-avoidable Liens and security interests that are perfected prior to the Commencement Date (or perfected after the Commencement Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements, and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Prepetition Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms, (i) no objection, offset, defense or counterclaim of any kind or nature to the Prepetition Indebtedness exists, and (ii) the Prepetition Indebtedness, and any amounts paid at any time to

7

any Prepetition Agent or any Prepetition Lender on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

E.    The Debtors' businesses have an immediate need to obtain the DIP Facility in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations (including letters of credit and other credit support) is vital to the preservation and maintenance of the going concern values of the Debtors and to the success of these Chapter 11 Cases. Without such credit, the Debtors would not be able to operate their businesses and the Debtors' estates would be irreparably harmed.

F.    The Debtors are unable to obtain sufficient financing from sources other than the DIP Facility Lenders on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement, the "DIP Facility Documents"). The Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b) (1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtors without (i) providing the DIP Facility Agent for the benefit of the DIP Facility Lenders (a) the DIP Facility Superpriority Claims and (b) the DIP Facility Liens as provided herein and in the DIP Facility Documents and (ii) without concurrently providing for adequate protection to the Prepetition Secured Parties on the terms and conditions as set forth herein.

8

G.      The DIP Facility Agent and DIP Facility Lenders have indicated a willingness to consent and agree to provide financing to the Debtors subject to (i) the entry of this Order, (ii) the terms and conditions of the DIP Facility Agreement, (iii) the terms and conditions of all "First-Day Orders" being, in form and substance, reasonably satisfactory to the DIP Administrative Agent, and (iv) findings by the Court that such postpetition financing is essential to the Debtors' estates, that the terms of such financing were negotiated in good faith and at arm's length, and that the DIP Facility Agent's and/or the DIP Facility Lenders' DIP Facility Liens and Superpriority Claims, and other protections granted pursuant to this Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code. Each of the DIP Facility Agent and DIP Facility Lenders has acted in good faith in negotiating, consenting to and in agreeing to provide the postpetition financing arrangements contemplated by this Order and the other Postpetition Financing Documents and the reliance of each of the DIP Facility Agent and DIP Facility Lenders on the assurances referred to above is in good faith.

H.      Telephonic, facsimile notice or overnight mail notice of the Interim Hearing and the entry of this Order has been provided to (i) the thirty (30) largest creditors listed in the Debtors' consolidated list of creditors (excluding insiders), (ii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (iii) the Securities and Exchange Commission, (iv) counsel to each of the DIP Facility Agent, (v) counsel to each of the Prepetition Agents, (vi) counsel to the Trustee under the Senior Subordinated Note Agreement dated as of May 27, 2007 for the 11% Senior Subordinated Notes due 2012, (vii) counsel to the *ad hoc* committee of Noteholders, (viii) the United States Department of Justice (the "DOJ"),

(viii) the U.S. Food and Drug Administration (the "FDA"), and (ix) any other parties requesting such notice, (ix) counsel to the Debtors' equity sponsors; (x) all counterparties to nonresidential real property leases of the Debtors; and (xi) all parties asserting an Existing Lien (as such term is defined in Section 6.02 of the DIP Facility Agreement) against the Debtors' assets (collectively, the "Notice Parties"). Under all the exigent circumstances, the requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Order.

I.    The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b) (2) and 4001(c) (2). Absent entry of this Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.

J.    The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, including letters of credit and credit support, is in the best interests of the Debtors and their respective creditors and estates. The interim financing authorized hereunder is vital to avoid immediate irreparable harm to the Debtors' businesses, properties and estates and to allow the orderly continuation of the Debtors' businesses.

K.    Based upon the record presented by the Debtors to this Court: (i) the terms of the DIP Facility are the best available under the circumstances , reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility has been negotiated

10

in good faith and at arm's length among the Debtors and the DIP Facility Agent, and any credit extended, letters of credit issued, loans made, credit support provided and other financial accommodations extended to the Debtors by the DIP Facility Lenders shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

L. None of the Prepetition Secured Parties have opposed the terms and conditions of this Order, including the priming under section 364(d) of the Bankruptcy Code as provided for herein.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. <u>Disposition</u>. The Motion is granted as set forth in this Order. Any objections that have not previously been withdrawn are hereby overruled. This Order shall immediately become effective upon its entry.

2. <u>Authorization to Borrow</u>. Upon finalizing and executing that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement (the "<u>DIP Facility Agreement</u>") by and among the Borrowers, the Guarantors, the DIP Facility Agent, and the DIP Facility Lenders, in substantially the form annexed to the Motion and provided that the Debtors are not in default under the terms of this Order, the Debtors are immediately authorized to borrow under the DIP Facility from the DIP Facility Lenders up to $20 million (together with interest, fees, charges and expenses payable under the DIP Facility Documents, pursuant to the terms and conditions of the DIP Facility Agreement and use such Advances and proceeds in accordance with the Baseline Budget and the terms of the DIP Facility Agreement. Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute legal, valid, and binding obligations of the Debtors and Guarantors party thereto, enforceable against each such Debtor and Guarantor in accordance with their terms. Upon the entry of the Final Order,

11

additional financing and advances under the DIP Facility Agreement will be made available to fund the Debtors' working capital, financing and other general corporate needs and to pay other amounts required or allowed to be paid pursuant to the DIP Facility Agreement, the Baseline Budget, this Order and any other orders of this Court.

3.      DIP Facility Superpriority Claims. For all of the Debtors' Obligations and Postpetition Indebtedness arising under the DIP Facility and the DIP Facility Documents, the DIP Facility Lenders and the DIP Facility Agent are granted, pursuant to section 364(c) (1) of the Bankruptcy Code, subject to the Carve-Out, the DIP Facility Superpriority Claims which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Debtors whether now existing or hereafter acquired.

4.      DIP Facility Liens. As security for the Postpetition Indebtedness, pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, the DIP Collateral Agent, on behalf of itself and the DIP Facility Lenders, is hereby granted (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lock box agreements, financing statements, or otherwise) the DIP Facility Liens. The DIP Facility Liens granted herein shall prime and be senior in all respects to the Prepetition Liens and the Replacement Liens pursuant to section 364(d) of the Bankruptcy Code and upon entry of this Order, all possessory collateral held by the Prepetition Agents shall be deemed to have been transferred to the DIP Facility Agent and at the request of the DIP Administrative Agent, the Prepetition Agents shall transfer and assign their interests in any blocked account or tri-party bank account agreements to the DIP Facility Agent for purposes of perfection and control. In the event of the occurrence of an Event of Default or similar event under the DIP Facility

12

Documents (an "Event of Default"), the DIP Facility Liens, the Prepetition Liens and the Replacement Liens shall be subject to the payment of the Carve-Out. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Facility Liens shall be junior to the Permitted Prior Liens; provided however, the DIP Facility Liens shall be senior in all respects to and prime (i) the Prepetition Agents' and Prepetition Lenders' liens, claims and interests under the Prepetition Financing Documents (including the Prepetition Liens and Replacement Liens each as defined and granted herein) and (ii) any liens, claims and interests of the DOJ and FDA, if any, pursuant to section 364(d)(1) of the Bankruptcy Code.

5.      Carve-Out. Subject to the terms and conditions contained in this paragraph, the DIP Facility Liens, DIP Facility Superpriority Claim, the Adequate Protection and liens and claims held by the Prepetition Secured Parties shall be subject to the following: (i) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (ii) professional fees and expenses of the Debtors and the official committee of unsecured creditors (the "Committee") (the "Professional Fees") incurred prior to delivery of a notice or the Final Maturity Date (such Professional Fees, the "Accrued Claims" and such notice, the "Carve-Out Notice"); (iii) Professional Fees incurred subsequent to delivery of the Carve-Out Notice in an aggregate amount not to exceed $6,000,000 provided however, in the event a sale of substantially all of the Debtors' assets is not approved in the Cases, then the $6,000,000 amount referred to in this clause shall be reduced to an aggregate amount not to exceed $2,500,000 (the sum of (i), (ii) and (iii) above, the "Carve-Out Cap"); and (iv) any amounts due under the Sale Bonus Program (the "Sale Bonus Carve-Out," and together with the Carve-Out Cap, the "Carve-Out"). The Carve-Out shall exist at all time, but only be triggered and payable upon (i) the occurrence of an Event of Default under the DIP Loan Documents and the DIP

13

Administrative Agent's delivery of a Carve-Out Notice to the Debtors, counsel for the Debtors, and counsel to the Committee or (ii) the Final Maturity Date. Notwithstanding anything to the contrary herein, unless the Carve-Out has been funded pursuant to a separate Order of this Court from the proceeds of a sale of the Debtors' assets then, (i) upon or following the occurrence of the Final Maturity Date, the Debtors shall be authorized to request an Advance and the DIP Facility Lenders shall fund such Advance, in an amount equal to (a) the Carve-Out Cap, estimated as of the Final Maturity Date, for payment of the Carve-Out Cap and the DIP Facility Agent and DIP Facility Lenders shall fund such Carve-Out Cap amount into an escrow account for the benefit of the Debtors' and Committee's professionals and Debtors' payment of such Accrued Claims and Professional Fees; and (b) upon the occurrence of the Final Maturity Date, in the event there is a sale of substantially all of the Debtors' assets, the Debtors shall be authorized to request an Advance and the DIP Facility Lenders shall fund such Advance, in an amount equal to the Sale Bonuses Program for payment of amounts due under such Sale Bonuses Program and the DIP Facility Agent and DIP Facility Lenders shall fund such Sale Bonus Program amount into an escrow account for the benefit of the individuals participating in such Sale Bonuses Program and Debtors' payment of such Sale Bonuses Program; and (c) upon or following the occurrence of an Event of Default and Delivery of the Carve-Out Notice, the Debtors shall be authorized to request an Advance and the DIP Facility Lenders shall fund such Advance, in an amount equal to the Carve-Out Cap estimated as of the Carve-Out Notice date, and the DIP Facility Agent and DIP Facility Lenders shall fund such Carve-Out Cap amount into an escrow account maintained by the DIP Administrative Agent for the benefit of the Debtors' professionals and the Committee's professionals (the "Carve-Out Escrow"); provided however, that the payment of the Accrued Claims and Professional Fees shall be made upon each

14

professional's presentment of an accounting of such fees to the DIP Administrative Agent, with such payments to be made first from proceeds from the liquidation of the Collateral and second from the Carve-Out Escrow at the DIP Administrative Agent's option as the Accrued Claims and Professional Fees are incurred until the Carve-Out Cap is paid in full; provided further, that in the event there is any unused proceeds in any escrow account established for the payment of the Carve-Out under this Order, then such unused portion shall be returned to the DIP Facility Agent, on behalf of the DIP Facility Lenders upon the closing of the Cases. In all cases, the Carve-Out, Advances, Letters of Credit, Cash Collateral and Collateral shall not include, apply to, or be available for any fees or expenses incurred by any party, including the Debtors or the Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Facility Agent or the DIP Facility Lenders, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Postpetition Indebtedness, the DIP Facility Superpriority Claim, or the security interests and liens of the DIP Facility Agent in respect thereof, (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Facility Agent's or DIP Facility Lenders' assertion, enforcement or realization on the Collateral in accordance with the DIP Facility Documents or this Order or any Avoidance Actions against the DIP Facility Agent or the DIP Facility Lenders, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the Prepetition Secured Parties, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Indebtedness, or the Adequate Protection granted herein; provided however, up to the amount of

15

$35,000 shall be permitted to be used by professionals of the Committee to investigate the liens, claims and interests of the Prepetition Secured Parties. The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtors, the DIP Facility Agent, the DIP Facility Lenders, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.

      6.    Investigation Rights. Notwithstanding anything herein to the contrary, including the Debtors' stipulations and releases herein solely as they relate to the Prepetition Agents, Prepetition Lenders, Prepetition Credit Facility, the Committee, if appointed, and all non-debtor parties (including any trustee appointed or elected in the cases prior to the Investigation Termination Date) in interest and any subsequently appointed trustee in the Cases shall have until seventy-five (75) days from the Commencement Date (the "Investigation Termination Date")[4] to investigate the validity, perfection, and enforceability of the Prepetition Liens and the amount and allowability of the Prepetition Indebtedness, or to assert any other claims or causes of action against any of the Prepetition Secured Parties. If the Committee, or any non-debtor party in interest hereafter vested with authority by the Court, determines that there may be a challenge by the Investigation Termination Date, upon three (3) days' written notice to the Debtors and the Prepetition Agents, (which notice may be given on the Investigation Termination Date), such Committee or other non-debtor party in interest hereafter vested with authority by the Court shall be permitted to file and prosecute an objection or claim related thereto (each, a "Challenge"), and shall have only until the Investigation Termination Date to file such objection or otherwise initiate an appropriate action or adversary proceeding (including a motion seeking authority to file an action) on behalf of the Debtors' estates setting

---

[4] Until the occurrence of the Investigation Termination Date, the Debtors' stipulations and releases herein shall not be binding upon the Committee and any non-debtor parties in interest.

16

forth the basis of any such challenge, claim or cause of action. If a Challenge is not filed on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the Prepetition Agents), agreements, acknowledgements and stipulations contained in paragraph D of this Order shall be irrevocably binding on the estates, Committee and all parties in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Cases or in any jurisdiction) without further action by any party or this Court and the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Cases or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge.

7.      Limitation on Additional Surcharges. So long as the DIP Facility Lenders are providing postpetition financing or otherwise allowing the use of cash collateral, with the exception of the Carve-Out and except as otherwise permitted by the DIP Facility, upon approval at the Final Hearing, neither the Collateral nor any DIP Facility Agent, DIP Facility Lender, or any Prepetition Secured Parties shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of the DIP Administrative Agent and Prepetition Agents and no such consent shall be implied from any other action, inaction, or acquiescence by the Lending Parties in this proceeding, including but not limited to funding of the Debtors' ongoing operation by the DIP Facility Agent and DIP Facility Lenders. Upon approval at the Final Hearing, the DIP Facility Agent, DIP Facility Lender, Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral; provided however, that upon approval at the Final Hearing, the DIP Facility Agent's liens claims and

17

interest in the Avoidance Actions shall only be authorized in a liquidation context and shall be the last Collateral applied to satisfy the Postpetition Indebtedness by the DIP Facility Agent.

        8.        Prepetition Secured Parties Adequate Protection and Cash Collateral Use. Upon entry of this Order, to the extent Debtors have cash on hand and have not requested any Advances under the DIP Facility, then the Prepetition Agents, on behalf of the Prepetition Lenders, consent to the limited use of cash collateral (as defined under section 363 of the Bankruptcy Code) strictly in accordance with the use provisions of the DIP Facility Agreement and Baseline Budget. Immediately upon the first Advance under the DIP Facility, the limited use of Cash Collateral authorization shall terminate and any remaining cash on hand shall be subject to the DIP Facility Liens and the DIP Facility Documents. In consideration for the limited use of Cash Collateral and the priming of the Prepetition Agents' liens, claims and interests in the Collateral (solely upon the terms and conditions of this Order), the Prepetition Secured Parties shall receive the following (collectively the "Adequate Protection"): (a) To the extent there is a diminution in Prepetition Lenders' collateral, the Prepetition Agents, on behalf of the Prepetition Lenders, are granted a replacement lien in the Collateral, subject to the Carve-Out (the "Replacement Liens");

        (b)        Subject to the Carve-Out, an administrative claim (the "Prepetition Lenders Administrative Claim") against the Debtors' estates to the extent that the Replacement Liens do not adequately protect the decrease in the value of the Prepetition Lenders' collateral as a result of the priming under the DIP Facility, which Prepetition Lenders Administrative Claim, if any, shall be junior and subordinate to the DIP Facility Superpriority Claims; and

        (c)        Subject to the Carve-Out, payments of the Prepetition Agents' and their counsel's reasonable fees and expenses for legal counsel, financial advisors and appraisers for

services rendered prepetition or postpetition on behalf of the Prepetition Agents or their counsel; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines, but such professional shall provide copies of summary invoices and statements to the U.S. Trustee and counsel to the Committee, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Court shall have jurisdiction to determine any dispute concerning such invoices, and provided, further, however, that such payments shall be provisional in nature, and if and to the extent that any payment(s) is challenged by a party in interest under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, such payment(s) may be recharacterized as a payment of principal on the indebtedness under the Prepetition Credit Facility.

9.      Fees and Expenses of the DIP Facility Agent and the DIP Facility Lenders. The Debtors shall promptly following receipt of a written summary invoice (with a copy delivered to the U.S. Trustee), reimburse the DIP Facility Agent and the DIP Facility Lenders for their reasonable out-of-pocket costs, fees (including reasonable attorneys' fees), charges, and expenses incurred in connection with the Cases whether incurred prepetition or postpetition. None of such out-of-pocket costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court, provided that the Court shall have jurisdiction to determine any dispute concerning such invoices.

10.      Restrictions on the Debtors. Other than the Carve-Out and the Permitted Prior Liens, no claim having a priority superior or *pari passu* with those granted by this Order to

19

the DIP Facility Agent, the DIP Facility Lenders shall be granted by any Debtor or Guarantor, while any portion of the DIP Facility (or refinancing thereof) or the commitment thereunder remains outstanding without the written consent of the DIP Administrative Agent. Except as expressly permitted by the DIP Facility Agreement and this Order, the Debtors will not, at any time during the Cases, grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

11.     Additional Perfection Measures. The DIP Facility Agent and DIP Facility Lenders shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Order (including, without limitation, the taking possession of any of the Collateral, the execution of any control, lock-box, deposit account, or the taking of any action to have security interests or liens noted on certificates of title or similar documents). Notwithstanding the foregoing, the DIP Facility Agent and DIP Facility Lenders may, in their sole discretion, file such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time of and on the Commencement Date.

12.     Access to Collateral – No Landlord's Liens. Upon approval at the Final Hearing, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Facility Agent, for the ratable benefit of the DIP Facility Lenders, contained in this Order or the DIP Facility Documents, or otherwise available at law or

RLF1-3262004-1

in equity, and subject to the terms of the DIP Facility Agreement, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Facility Agent may, subject to any separate agreement by and between such landlord and the DIP Facility Agent, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Facility Agent shall only pay rent of the Debtors that first accrues after the DIP Facility Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Facility Agent, calculated on a per diem basis. Nothing herein shall require the DIP Facility Agent to assume any lease as a condition to the rights afforded to the DIP Facility Agent in this paragraph. Furthermore, other than Permitted Liens, any landlord's lien, bailee's rights, right of distraint or levy, security interest or other interest that any landlord, warehousemen, bailee or landlord's mortgagee may have in any Collateral of the Debtors located on such leased premises, to the extent the same is not void under Section 545 of the Bankruptcy Code, is hereby expressly subordinated to the DIP Facility Liens in such Collateral.

13.     Automatic Stay.     Subject only to the provisions of the DIP Facility Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Facility Agent and DIP Facility Lenders to exercise, upon the occurrence and during the continuance of any Event of Default (as defined and provided for in Article 8.01 of the DIP Facility Agreement), all rights and remedies provided for in the DIP Facility Documents (including, without limitation, the right to freeze monies or balances in the Debtors' accounts or

21

set off monies or balances of the Debtors in accounts maintained by the DIP Facility Agent or any DIP Facility Lender); *provided however,* that prior to the exercise of any enforcement or liquidation remedies against the Collateral, the DIP Facility Agent shall be required to give five (5) business days written notice provided to the Debtors, their bankruptcy counsel, the Committee's counsel, and the U.S. Trustee.  Notwithstanding the occurrence of an Event of Default or termination of the Commitments under the DIP Facility Agreement or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP Facility Agent and DIP Facility Lenders under the DIP Facility Documents and this Order shall survive the Final Maturity Date.  The Debtors and/or the Committee shall have the initial burden of proof at any hearing on any request by the Debtors and/or the Committee to re-impose or continue the automatic stay as provided for herein; *provided, however,* that nothing contained herein shall constitute a waiver of the Debtors' right to challenge the occurrence or existence of an Event of Default or shall prohibit the Debtors from contesting, disputing or challenging the occurrence or existence of an Event of Default.  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

14. Binding Effect.  The provisions of this Order shall be binding upon and inure to the benefit of the DIP Administrative Agent, the DIP Facility Lenders, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns.  Except as provided for in paragraph 6, to the extent permitted by applicable law, this Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Cases or in the event of

22

the conversion of any of the Cases to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Order.

15.      Survival.   The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order (i) confirming any plan of reorganization in any of the Cases (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Cases to a chapter 7 case; or (iii) dismissing any of the Cases, and the terms and provisions of this Order as well as the DIP Facility Superpriority Claims, the DIP Facility Liens, and the Adequate Protection granted pursuant to this Order and the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Order, and the DIP Facility Documents and to the maximum extent permitted by law until all of the Postpetition Indebtedness and Prepetition Indebtedness is indefeasibly paid in full in cash and discharged.   Further, the Carve-Out provisions, including the DIP Lenders funding obligations and the escrow accounts shall survive the Final Maturity Date as provided for herein.

16.      After Acquired Property.   Except as otherwise provided in this Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Commencement Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Facility Agent, on behalf of themselves and the DIP Facility Lenders, pursuant to the DIP Facility Documents and this Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Commencement Date, except to the extent that such property constitutes proceeds of property of

23

the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Commencement Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

17.    <u>Access to the Debtors</u>. In accordance with the provisions of access in the DIP Facility Documents, the Debtors shall permit representatives, agents, and/or employees of the DIP Facility Agent and DIP Facility Lenders to have reasonable access to their premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such non-privileged information as they may reasonably request.

18.    <u>Authorization to Act</u>. Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay fees as provided under this Order, which may be reasonably required or necessary for the Debtors' performance under the DIP Facility and this Order, including, without limitation:

a.    the execution of the DIP Facility Documents;

b.    the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Debtors, the DIP Facility Agent, and the DIP Facility Lenders may agree (except for any modification or amendment to shorten the maturity of the extensions of credit thereunder, or increase the rate of interest or the letter of credit fees payable thereunder); *provided, however,* that notice of any material modification or amendment shall be provided to the Committee and the U.S. Trustee, each of which will have five (5) days from the date of such notice within which

24

to object in writing (other than for amendments provided for in the Fee Letter); *provided further,* *however,* that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court; and the non-refundable payments to the DIP Facility Agent or the DIP Facility Lenders, as the case may be, of the Fees referred to (and defined) in the DIP Facility Agreement and the Fee Letter (which shall remain confidential and under seal), and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents; provided, however, the Debtors shall only be authorized to pay up to the amount of the Commitment Fee for fees due and owing under the Fee Letter with the balance of any fees paid upon entry of the Final Order.

19.     Insurance Policies.   Upon entry of this Order, the DIP Facility Agent and DIP Facility Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral.   Any insurance proceeds or other receipts from any source (excluding other authorized payments provided for herein) paid to any of the Prepetition Secured Parties shall be immediately delivered to the Debtors and subject to the DIP Facility Liens and provisions of the DIP Facility Agreement.

20.     Subsequent Reversal.   If any or all of the provisions of this Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the DIP Administrative Agent:   (i) such modification, vacatur, amendment, or stay shall not affect the validity of any obligation of any Debtor or Guarantor to the DIP Facility Agent, DIP Lenders or Prepetition Secured Parties that is or was incurred prior to the effective date of such modification, vacatur, amendment, or stay (the

25

"Effective Date"), or the validity, enforceability or priority of the DIP Facility Superpriority Claim, DIP Facility Liens or other grant authorized or created by this Order and the DIP Facility Documents; (ii) the Postpetition Indebtedness pursuant to this Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the original provisions of this Order and the DIP Facility Documents, and the validity of any such credit extended or security interest granted pursuant to this Order and the DIP Facility Documents is and shall be protected by section 364(e) of the Bankruptcy Code; (iii) Adequate Protection furnished to the Prepetition Secured Parties pursuant to this Order shall be governed in all respects by the original provisions of this Order and the Prepetition Financing Documents.

21.     Effect of Dismissal of Cases.  If the Cases are dismissed, converted or substantively consolidated, then neither the entry of this Order nor the dismissal, conversion or substantive consolidation of these Cases shall affect the rights of the DIP Facility Agent, DIP Lenders and the Prepetition Secured Parties under their respective documents or this Order, and all of the respective rights and remedies thereunder of the DIP Facility Agent, DIP Lenders and the Prepetition Secured Parties shall remain in full force and effect as if the Cases had not been dismissed, converted, or substantively consolidated. If an order dismissing any of the Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Facility Liens and DIP Facility Superpriority Claim granted to and conferred upon the DIP Facility Agent and DIP Facility Lenders and the protections afforded to the DIP Facility Agent and/or the DIP Facility Lenders pursuant to this Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Postpetition Indebtedness shall have been paid and satisfied in full in cash and, with respect to outstanding undrawn letters of credit, cash collateralized in

26

accordance with the provisions of the DIP Facility Agreement (and that such DIP Facility Liens, DIP Facility Superpriority Claim and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (ii) the Adequate Protection granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Prepetition Indebtedness shall have been paid and satisfied in full, and (iv) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Prepetition Liens, DIP Facility Superpriority Claim, and Adequate Protection referred to herein, and (iv) any hearing on a motion to dismiss any of the Cases shall require at least twenty (20) days prior notice to allow the DIP Facility Agent and DIP Facility Lenders to perfect their security interest and liens in the Collateral under non-bankruptcy law. The provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting any of the Cases from Chapter 11 to Chapter 7.   In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the Postpetition Indebtedness from those set forth in the DIP Facility Documents. The Postpetition Indebtedness shall not be extinguished or released by the entry of any order confirming a plan of reorganization in any of the Cases unless the Postpetition Indebtedness is paid in full in cash upon the effective date of any such plan and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived discharge.

    22.  Findings of Fact and Conclusions of Law.  This Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Commencement Date immediately upon the entry thereof.

27

23.    <u>Controlling Effect of Order</u>.  To the extent any provision of this Order conflicts with any provision of the Motion, any prepetition agreement or any document executed in connection with the DIP Facility, the provisions of this Order shall control.

24.    <u>Final Hearing.</u>  A final hearing on the Motion shall be heard before this Court on **April 8, 2008 at 1:30 p.m. (Prevailing Eastern Time)** at the United States Bankruptcy Court for the District of Delaware, Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware 19801.

25.    <u>Adequate Notice.</u>  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2).  Within three (3) business days after the Court's entry of this Order, the Debtors shall mail copies of this Order and notice of the Final Hearing to the Notice Parties and (i) known holders of a Lien against any of the Debtors' assets and (ii) all landlords of the Debtors.  Any party-in-interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file same with the Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than **April 1, 2008 at  5:00 p.m. (Prevailing Eastern Time)** on the following:

(a)    **Kirkland & Ellis, LLP,** Citigroup Center, 153 East 53rd Street, New York, New York 10022 (Attn: Paul M. Basta, Esq., Edward O. Sassower, Esq. and Andres C. Mena, Esq.) and **Richards, Layton & Finger, P.A.**, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:   Mark D. Collins, Esq. and Jason M. Madron, Esq.), proposed counsel to Debtors and Debtors-in-Possession;

(b)    **Paul Hastings Janofsky & Walker, LLP**, 600 Peachtree Street, Suite 2400, Atlanta, Georgia 30308 (Attn:  Jesse H. Austin, III, Esq.) and 75 East 55th Street, New York, NY 10022 (Attn: Leslie A. Plaskon, Esq. and Kristine M. Shryock, Esq.) and **Duane Morris LLP,**

28

Suite 1200, 1100 North Market Street, Wilmington, DE 19801 (Attn. Richard W. Riley, Esq.), counsel to the DIP Facility Agent and Prepetition Agents;

(c)   **Munger, Tolles & Olson LLP**, 355 South Grand Avenue, Los Angeles, California 90071 (Attn: Mark Shinderman, Esq.) counsel to the *ad hoc committee* of Noteholders; and

(d)   **Office of the United States Trustee for the District of Delaware**, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Mark S. Kenney, Esq.).

Dated: March 12, 2008
       Wilmington, Delaware

The Honorable Kevin J. Carey
United States Bankruptcy Judge

29