**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEINER HEALTH PRODUCTS INC., et al., [1] | ) | Case No. 08–10446 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket Nos. 81, 169, 249, 328** |

## ORDER: (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (C) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") [Docket No. 81] of Leiner Health Products Inc., Leiner Health Products, LLC, and Leiner Health Services Corp. (collectively, the "Selling Debtors" and together with LHP Holding Corp., the "Debtors") for entry of an order, among other things: (i) approving the asset purchase agreement (the "APA" substantially in the form attached hereto as Exhibit A) between the Selling Debtors and the successful bidder at the Auction,[2] NBTY Acquisition, LLC (the "Purchaser"), (ii) authorizing the Sale[3] of all of the Selling Debtors' assets (other than certain excluded assets) to Purchaser free and clear of Encumbrances,[4] (iii) authorizing the assumption and assignment of certain executory contracts

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Leiner Health Products Inc. (1709), LHP Holding Corp. (7947), Leiner Health Products, LLC (6283) and Leiner Health Services Corp. (4464). The address for all Debtors is: 901 E. 233rd Street, Carson, CA 90745.

[2]     As defined in the Bidding Procedures Order.

[3]     As defined in the Motion.

[4]     Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the APA.

and unexpired leases in connection therewith, and (iv) granting other related relief; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and adequate notice of the Motion and opportunity for objection having been given, and all objections to the relief requested in the Motion having been overruled, resolved by consent as specified herein, or continued; and this Court having heard statements of counsel and the evidence presented in support of the relief requested by the Selling Debtors in the Motion at a hearing before this Court on June 11, 2008 (the "Sale Hearing"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor:

**THE COURT HEREBY FINDS THAT:[5]**

**Jurisdiction, Final Order and Statutory Predicates**

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure,

---

[5]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.      The statutory predicates for the relief requested in the Motion are sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

D.      This Court entered the Bidding Procedures Order on April 10, 2008 [Docket No. 210].

E.      This Court entered the Stalking Horse Bid Order on May 30, 2008 [Docket No. 358].

### Notice of the Sale, Auction and the Cure Costs

F.      Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, and the assumption and assignment of the Assigned Contracts that are not Non-Assumed Contracts nor Post-Petition Designated Contracts (collectively, the "Assigned Seller Contracts"), and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested Persons[6] and entities, including, but not limited to the following parties:

> 1.      the United States Trustee;
>
> 2.      counsel to the Official Committee of Unsecured Creditors (the "Committee");
>
> 3.      counsel to the agent for the Bank Group;[7]

_____

[6]      As defined in 11 U.S.C. § 101(41).

[7]      As defined in the Motion.

3

RLF1-3291902-2

4.     counsel to the agent for the Debtors' postpetition secured lenders (the "DIP Agent");

5.     the indenture trustee for each of the Debtors' outstanding bond issuances;

6.     counsel to the *ad hoc* group of the Debtors' senior subordinated bondholders;

7.     counsel to the Debtors' equity sponsors;

8.     the Securities and Exchange Commission;

9.     all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service;

10.    the United States Department of Justice;

11.    the Food and Drug Administration;

12.    all parties that have requested special notice pursuant to Bankruptcy Rule 2002;

13.    all Persons known or reasonably believed to have asserted an Encumbrance on any of the Purchased Assets;

14.    all litigants or known potential litigants against the Debtors;

15.    the counterparties to each of the Assigned Seller Contracts   (each a "Contract Counterparty");

16.    all Persons known or reasonably believed to have expressed an interest in acquiring the Purchased Assets;

17.    the Attorney General in the State where the Purchased Assets are located;

18.    the United States Environmental Protection Agency; and

19.    any applicable state environmental agency.

G.     The Selling Debtors published notice of the Sale, the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the Motion in the National Edition of The Wall Street Journal and the WSJ European and Asian Editions on April 15, 2008.

4

H.      In accordance with the provisions of the Bidding Procedures Order, the Selling Debtors have served notice upon the Contract Counterparties: (i) that the Selling Debtors seek to assume and assign the Assigned Seller Contracts on the Closing Date; and (ii) of the relevant Cure Costs.   The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing Cure Costs for the Assigned Seller Contracts.   Each of the Contract Counterparties have had an opportunity to object to the Cure Costs set forth in the notice.

I.      The Selling Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sales process, including, without limitation: (i) determination of final Cure Costs; and (ii) approval and authorization to serve the Sale Notice (as defined in the Bidding Procedures Order).

J.      The Sale Notice provided all interested parties with timely and proper notice of the Sale, Sale Hearing and Auction.

K.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, Auction, Sale Hearing, and Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.   The Selling Debtors also have complied with all obligations to provide notice of the Motion, Auction, Sale Hearing, and Sale required by the Bidding Procedures Order.   The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, Auction, Sale Hearing, Sale, or assumption and assignment of the Assigned Seller Contracts is required.

L.      The disclosures made by the Selling Debtors concerning the APA, Auction, Sale, Sale Hearing, and the assumption and assignment of the Assigned Seller Contracts were good, complete and adequate.

5

**Good Faith of the Purchaser**

M.     The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

N.     The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Purchaser recognized that the Selling Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser complied with the provisions in the Bidding Procedures Order, as modified by the Stalking Horse Bid Order; (iii) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order, as modified by the Stalking Horse Bid Order; (iv) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale, including Purchaser's intention to assign its right to purchase the capital stock or other equity ownership interests in the Non-Seller Entities to a wholly owned Subsidiary of Buyer Holdco formed under the laws of either a province of Canada or the federal laws of Canada, have been disclosed; (v) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (vi) no common identity of directors or controlling stockholders exists between the Purchaser and any of the Debtors; and (vii) the negotiation and execution of the APA was at arms' length and in good faith.

**Highest and Best Offer**

O.     The Selling Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order, as modified by the Stalking Horse Bid Order. The auction process set forth in the Bidding Procedures Order, as

6

modified by the Stalking Horse Bid Order, afforded a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The Auction was duly noticed and conducted in a noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

P.     The APA constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Selling Debtors' estates than would be provided by any other available alternative. The Selling Debtors' determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Selling Debtors' business judgment.

Q.     The APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these Chapter 11 Cases. No other Person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Selling Debtors' estates than the Purchaser.

R.     Approval of the Motion and the APA and the consummation of the transactions contemplated thereby is in the best interests of the Selling Debtors, their creditors, their estates and other parties in interest.

S.     The Selling Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

### No Fraudulent Transfer

T.     The consideration provided by the Purchaser pursuant to the APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the

7

Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof and the District of Columbia.

U. The Purchaser is not a mere continuation of the Selling Debtors or their estates and there is no continuity between the Purchaser and the Selling Debtors. The Purchaser is not holding itself out to the public as a continuation of the Selling Debtors. The Purchaser is not a successor to the Selling Debtors or their estates and the Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Selling Debtors. The sale of the Purchased Assets to the Purchaser is not being undertaken for the purpose of escaping liability for the Selling Debtors' debts.

### Validity of Transfer

V. The Selling Debtors have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Selling Debtors to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

W. The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest of the Selling Debtors to the Purchased Assets free and clear of all Encumbrances accruing, arising or relating thereto any time prior to the Closing Date, except for any Permitted Encumbrances under the APA.

### Section 363(f) Is Satisfied

X. The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser, and the assumption, assignment and sale of the Assigned Seller Contracts to the Purchaser, were not free and clear of all Encumbrances of any kind or nature whatsoever (except the Permitted

8

Encumbrances), or if the Purchaser would, or in the future could be liable for any of such Encumbrances.

Y.    The Selling Debtors may sell the Purchased Assets free and clear of all Encumbrances against the Selling Debtors, their estates or any of the Purchased Assets (except for the Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances against the Selling Debtors, their estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, in each instance against the Selling Debtors, their estates or any of the Purchased Assets, attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Selling Debtors and their estates may possess with respect thereto.

## Assumption and Assignment of the Assigned Seller Contracts

Z.    The assumption and assignment of the Assigned Seller Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of the Selling Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Selling Debtors.

AA.    The respective amounts set forth on Exhibit B annexed hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy

9

Code to cure all monetary defaults and pay all actual pecuniary losses under the Assigned Seller Contracts (the "Cure Costs").

BB.    Pursuant to the terms of the APA, on the Closing Date or as soon as is reasonably practicable thereafter, the Purchaser shall have, by paying the Cure Costs:  (i) cured and/or provided adequate assurance of cure of any monetary default existing prior to the Closing Date under any of the Assigned Seller Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assigned Seller Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

## Compelling Circumstances for an Immediate Sale

CC.    To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, and to reduce the amount of postpetition debtor-in-possession financing borne by the Debtors, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the APA.  Time is of the essence in consummating the Sale.

DD.    Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the purchase price under the APA, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Selling Debtors' business judgment and should be approved.

EE.    The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

10

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

<u>General Provisions</u>

1.      The relief requested in the Motion is granted and approved, and the Sale contemplated thereby and by the APA is approved as set forth in this Order.

2.      This Court's findings of fact and conclusions of law, set forth in the Bidding Procedures Order and the Stalking Horse Bid Order, are incorporated herein by reference.

3.      All objections to the Motion or the relief requested therein, including but not limited to the objections filed by the Committee, Delavau, LLC, and U.S. Bank National Association, that have not been withdrawn, continued, waived, or settled as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

<u>Approval of the APA</u>

4.      The APA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Selling Debtors are authorized, empowered and directed to (a) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the APA, (b) close the Sale as contemplated in the APA and this Order, and (c) execute and deliver, perform under, consummate, implement and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

11

6.      This Order shall be binding in all respects upon the Selling Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any Claim(s)[8] (whether known or unknown) against any Debtor, any holders of Encumbrances against or on all or any portion of the Purchased Assets, all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, and any trustees, if any, subsequently appointed in any of the Selling Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Selling Debtors' cases. This Order and the APA shall inure to the benefit of the Selling Debtors, their estates and creditors, the Purchaser and their respective successors and assigns.

## Transfer of the Purchased Assets

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Selling Debtors are authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser "as is where is" with all faults in accordance with the APA upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets. Upon the Selling Debtors' receipt of the Cash Purchase Price less the Holdback Amount, the Purchased Assets shall be free and clear of all Encumbrances except any Permitted Encumbrances. On the Closing Date, the Purchaser shall take title to and possession of the Purchased Assets subject only to any Permitted Encumbrances. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets, including but not limited to the Assigned Seller Contracts, shall be free and clear of any and all Encumbrances, including Encumbrances (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the

---

[8] As defined in Section 101(5) of the Bankruptcy Code.

12

Selling Debtors' interests in the Purchased Assets, or any similar rights, (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, and (iii) (A) arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (B) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Selling Debtors or any of the Selling Debtors' predecessors or affiliates, Claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, indemnities, indemnity obligations and warranties relating to any acts, omissions or circumstances arising prior to the Closing Date, including those constituting Excluded Liabilities, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to Claims otherwise arising under doctrines of successor liability or any Claims or Encumbrances related to the Excluded Assets or the Excluded Liabilities; except for Permitted Encumbrances, and shall be free and clear of any and all Claims (as defined at Section 101(5) of the Bankruptcy Code) including, without limitation, any and all Claims pursuant to any successor or successor-in-interest liability theory; *provided, however*, that the Purchaser shall not be relieved of liability with respect to the Assumed Liabilities. All Encumbrances shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Selling Debtors and their estates may possess with respect thereto.

13

8.      Except as expressly permitted or otherwise specifically provided by the APA or this Order, all Persons and entities holding Encumbrances or interests in all or any portion of the Purchased Assets (other than Permitted Encumbrances) arising under or out of, in connection with, or in any way relating to the Selling Debtors, the Purchased Assets, the operation of the Selling Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such Persons' or entities' Encumbrances in and to the Purchased Assets. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Encumbrances (except the Permitted Encumbrances) on the Purchased Assets, if any, as provided for herein, as such Encumbrances may have been recorded or may otherwise exist. The transactions authorized herein shall be of full force and effect, regardless of any Selling Debtor's lack of good standing in any jurisdiction in which such Selling Debtor is formed or authorized to transact business. Upon consummation of the transactions set forth in the APA, the Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

9.      All Persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Selling Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the APA and this Order.

14

10.     All Persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee on the Closing Date.

11.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Encumbrances of record except the Permitted Encumbrances.

12.     If any Person or entity which has filed statements or other documents or agreements evidencing Encumbrances on, interests in, all or any portion of the Purchased Assets shall not have delivered to the Selling Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Encumbrances, which the Person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Selling Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such Person or entity with respect to the Purchased Assets.

13.     This Order is and shall be binding upon and govern the acts of all Persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Persons and entities is hereby directed to accept for filing any and all of the

15

documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

## Assigned Seller Contracts to be Assigned

14.    Subject to paragraphs 21-23 herein, on the Closing Date and upon Purchasers' or Selling Debtors' payment of the relevant Cure Costs, the Selling Debtors are authorized and directed to assume and assign each of the Assigned Seller Contracts (other than with respect to those contracts that the Selling Debtors have agreed to in writing by mutual consent with the counter-party on or prior to the Sale Hearing that are not subject to assumption and assignment, notwithstanding the service of a notice of Cure Costs) to the Purchaser free and clear of all Encumbrances, as described herein.  The payment of the applicable Cure Costs (if any) by the Purchaser shall (a) effect a cure of all defaults existing thereunder as of the Closing Date and (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default.  The Purchaser shall then have assumed the Assigned Seller Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Selling Debtors of such Assigned Seller Contracts shall not be a default thereunder.  After the payment of the relevant Cure Costs by the Purchaser, neither the Selling Debtors nor the Purchaser shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Assigned Seller Contracts that accrue and become due and payable on or after the Closing Date.

15.    Any provisions in any Assigned Seller Contracts that prohibit or condition the assignment of such Assigned Seller Contracts or allow the party to such Assigned Seller Contracts to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Seller Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the

16

assumption by the Selling Debtors and assignment to the Purchaser of the Assigned Seller Contracts have been satisfied. On the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Selling Debtors under the Assigned Seller Contracts.

16.    On the Closing Date and upon Purchasers' payment of the relevant Cure Costs, if any, the Purchaser shall be deemed to be substituted for the Selling Debtors as a party to the applicable Assigned Seller Contracts and the Selling Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Seller Contracts.

17.    Upon the payment of the applicable Cure Cost, if any, the Assigned Seller Contracts will remain in full force and effect, and no default shall exist under the Assigned Seller Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18.    The Purchaser has provided adequate assurance of future performance under the relevant Assigned Seller Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

19.    There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Selling Debtors as a result of the assumption and assignment of the Assigned Seller Contracts.

20.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Selling Debtors or the Purchaser any assignment fee, default, breach or Claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Seller Contracts existing as of the Closing Date or arising by reason of the Closing.

17

21.     Notwithstanding anything else to the contrary herein, and consistent with the record at the Sale Hearing, the objections of all parties that filed a timely adequate assurance, cure amount, and/or other objection (the "Objections" and each an "Objection") to the Sale Motion shall be resolved as follows:

    (i)     The Objection of ADT Security Services, Inc. ("ADT") [Docket No. 403] is resolved in its entirety as follows:  The Selling Debtors are authorized and directed to assume the contracts with ADT listed on Exhibit B attached hereto (the "ADT Contracts") and assign such ADT Contracts to the Purchaser in accordance with the terms of the APA, and in connection with such assumption and assignment, the Selling Debtors and/or the Purchaser, as applicable under the terms of the APA, shall pay ADT (i) the aggregate amount of $43,893.97 for undisputed prepetition amounts due and owing under the ADT Contracts and (ii) any and all postpetition amounts due and owing under the ADT Contracts (to the extent such amounts have not already been paid), as soon as is practicable after the Closing Date, but in no event more than 10 business days after such Closing Date.  The Selling Debtors shall also reserve an amount equal to $14,898.42 for disputed prepetition amounts due and owing under the ADT Contracts (the "ADT Disputed Amount"), with the Selling Debtors and ADT reconciling the ADT Disputed Amount no later than one (1) business day prior to the Closing Date.  Any portion of the ADT Disputed Amount determined to be a valid cure amount due and owing under the ADT Contracts shall be paid to ADT as soon as is practicable after the Closing Date, but in no event more than 10 business days after such Closing Date.

    (ii)     The objection of Raymond Leasing Corporation and Raymond Handling Solutions [Docket No. 349] (collectively, "Raymond") was withdrawn based upon the representations of the Purchaser and the Debtor made on the record at the sale hearing that the Selling Debtors do not request authority to assume or assign the leases of Raymond to the Purchaser at this time and none of the equipment covered by any of the Raymond leases is included in the Purchased Assets;

    (iii)     Notwithstanding any provision in the Sale Motion or the Sale Order, any contracts, including but not limited to the Resale Ordering Agreements, between the Debtors and the United States, on behalf of the Defense Commissary Agency, an agency of the Department of Defense, shall be treated and administered in accordance with applicable non-bankruptcy law in the ordinary course of business and the Debtors and the Purchaser shall comply with applicable federal law, regulations and statutes;

(iv)    The request for adequate assurance submitted by Watson Land Company ("Watson") on April 22, 2008 is deemed satisfied by among other things the commitment by Purchaser to pay obligations to Watson from the centralized cash management system maintained by NBTY, Inc. and its subsidiaries, and the informal objection of Watson is resolved in its entirety such that the Selling Debtors are authorized and directed to assume the contracts with Watson listed on Exhibit B attached hereto and assign such contracts to the Purchaser in accordance with the terms of the APA;

(v)    The objections of Advanced Beauty Systems, Inc. [Docket Nos. 370, 376, 407], Canon Business Solutions, Inc. [Docket No. 375], Cartus Corporation f/k/a Cendant Mobility Services Corporation [Docket 377], ProLogis [Docket 387], and Wockhardt USA, Inc., Wockhardt Holding Corp. and Wockhardt Limited [Docket 391] (collectively, the "Non-Assumed Contracting Parties") are resolved in their entirety as follows: The Selling Debtors do not request authority to assume or assign the contracts of the Non-Assumed Contracting Parties to the Purchaser at this time. Accordingly, the objections filed by the Non-Assumed Contracting Parties, including any requests for adequate assurance that were submitted, are moot. The Non-Assumed Contracting Parties reserve all rights to reinstate their objections in the event that the Selling Debtors seek to assume and/or assign such contracts at a later date;

(vi)    The objections of J.P. Weaver, Inc. [Docket No. 385] and Wilson Iron Works, Inc. [Docket No. 379] have been resolved in their entirety as follows: The liens of J.P. Weaver, Inc. and Wilson Iron Works, Inc., to the extent valid under North Carolina state law, shall attach to the proceeds of the Sale and shall be paid pursuant to the terms of any plan of liquidation that the Debtors file in these chapter 11 cases; and

(vii)    The Selling Debtors do not request authority to assume or assign the contract of Blue Choice Health Plan of South Carolina, Inc., California First Leasing Corporation, and Ocean Nutrition Canada Ltd. (collectively, the "Adequate Assurance Parties") to the Purchaser at this time. Accordingly, the informal requests for adequate assurance submitted by the Adequate Assurance Parties, to the extent they are objections, are overruled as moot.

22.    Oracle USA, Inc., successor-in-interest to Oracle Corporation ("Oracle"), shall reserve all rights and objection grounds with respect to its Objection [Docket No. 374], including any consent rights Oracle may have to the assumption and assignment of the contracts with Oracle listed on Exhibit B attached hereto (the "Oracle Contracts"). The Oracle Contracts shall

19

not be included in the meaning of the term "Assigned Contracts" under the APA or "Assigned Seller Contracts" under the Sale Order and shall not be assumed or assigned until each such Oracle Contract is resolved or adjudicated and such Oracle Contract is actually assumed and assigned. The objection filed by Oracle shall be continued to the July 7, 2008 omnibus hearing date. The request for adequate assurance submitted by Oracle, to the extent it is an objection, is satisfied.

23.     The following Objecting Parties shall reserve all rights and objection grounds with respect to their respective Objections (collectively, the "Remaining Objections"):

        (A)     Cal-Valencia I, LLC [Docket No. 373];

        (B)     Cal-Valencia II, LLC [Docket No. 372];

        (C)     CVS Pharmacy [Docket No. 419]; and

        (D)     Yellow Transportation, Inc. (f/k/a Yellow Freight System, Inc.) [Docket No. 386].

The contracts or leases relating to any of the Remaining Objections shall not be included in the meaning of the term "Assigned Contracts" under the APA or "Assigned Seller Contracts" under the Sale Order and shall not be assumed or assigned until each such Remaining Objection is resolved or adjudicated and such contract or lease is actually assumed and assigned. The Remaining Objections raised by the respective Objecting Parties shall be continued to the July 7, 2008 omnibus hearing date. Notwithstanding the foregoing, the request for adequate assurance submitted by Cal-Valencia I, LLC, Cal-Valencia II, LLC, and CVS Pharmacy is satisfied. The request for adequate assurance submitted by Yellow Transportation, Inc. (f/k/a Yellow Freight System, Inc.), to the extent it is an objection, is withdrawn.

## Other Provisions

24.     Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to this Court with respect to a specific matter, all Persons and entities are

20

forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Encumbrance (other than a Permitted Encumbrance) arising under, out of, in connection with or in any way relating to the Selling Debtors, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Encumbrance against the Purchaser, its successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

25.    Except for the Permitted Encumbrances and Assumed Liabilities or as otherwise expressly set forth in this Order or the APA, the Purchaser shall not have any liability or other obligation of the Selling Debtors arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the APA, the Purchaser shall not be liable for any Claims against the Selling Debtors or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious

21

liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Selling Debtors or any obligations of the Selling Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of (i) Claims arising under the Employee Retirement, Income, Security Act of 1974, as amended, and Claims arising under the Fair Labor Standards Act; provided that this subsection does not release the Purchaser from liability for claims that may arise after the Closing Date, (ii) Claims arising under Title VII of the Civil Rights Act of 1964, (iii) Claims arising under the Coal Industry Retiree Health Benefit Act of 1992, (iv) Claims arising under the Federal Rehabilitation Act of 1973, (v) Claims arising under the National Labor Relations Act, (vi) Claims arising under the Worker Adjustment and Restraining Act of 1988, (vii) Claims arising under the Age Discrimination and Employee Act of 1967, or (viii) Claims arising under the Consolidated Omnibus Budget Reconciliation Act of 1985; (ix) any products liability or similar Claims, whether pursuant to any state or federal laws or otherwise, including without limitation, any Claims related to the Excluded Assets; (x) Claims arising under any bulk sales or similar law; (xi) any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing; (xii) environmental Claims arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. or similar state statute; provided, however, that nothing in this Order or the APA releases, nullifies, precludes, or enjoins the enforcement of any liability to a

22

governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Closing Date; and (xiii) claims arising from the DOJ Investigation as defined in the Debtors' Motion for Entry of an Order Approving Settlement with United States Department of Justice.  The Purchaser has given substantial consideration under the APA for the benefit of the holders of any Encumbrance.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Encumbrances against or interests in the Selling Debtors or any of the Purchased Assets.

26.    The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Seller Contracts), unless such authorization and consummation of such Sale are duly stayed pending such appeal.  The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

27.    On or shortly after the Closing Date, the Selling Debtors are authorized to distribute from the proceeds of the Sale the following:

    (a)    any amounts required under the APA, after consultation with the Committee and approved by the DIP Agent, to consummate the closing of the Sale to the Purchaser;

    (b)    an amount equal to (i) the unpaid fees, expenses and disbursements of the Debtors' professionals and the Committee's professionals accrued and incurred prior to the Closing Date into an escrow account, for the benefit of the Debtors' professionals and Committee's professionals, to be paid to such professionals for approved fees and expenses and distributed pursuant

23

to the terms of the interim compensation procedures, and (ii) $2,500,000 into an escrow account, for the benefit of the Debtors' professionals and Committee's professionals, to be paid to such professionals for approved fees and expenses and distributed pursuant to the terms of the interim compensation procedures, *provided,* that in the event there is any unused proceeds in such escrow account, then such unused portion shall be (x) returned to the Agent for the Bank Group at the end of the Chapter 11 Cases to be applied to the unpaid portion of the Bank Group's claims and (y) if the Bank Group has been paid, then to the Debtors' estates;

(c)     an amount equal to the Sale Bonuses Program (as defined in the DIP Facility Agreement) into an escrow account, for the benefit of the individuals under the Sale Bonuses Program, to be paid to such individuals pursuant to the terms and conditions set forth in the Morrow Declaration;[9]

(d)     an amount equal to the Sale Transaction Fee (as defined in the DIP Facility Agreement) into an escrow account, for the benefit of Houlihan Lokey Howard & Zukin Capital, Inc., to be paid to such party pursuant to the interim compensation procedures;

(e)     any amounts necessary to repay the DIP Facility in full in cash and cash collateralize any issued letters of credit is to be paid to the Debtors' postpetition secured lenders; and

(f)     all remaining sale proceeds shall be placed into a separate designated identifiable account subject to the liens, claims and interests of the Agent, on behalf of the Bank Group, and all other valid liens, claims and interests, with such liens, claims and interests attaching to the proceeds with the same validity, extent and priority as had attached to the Purchased Assets immediately prior to the Sale, and the distribution or use of such funds shall be subject to further order of this Court.

28.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the APA or the terms of this Order.

---

[9]     See Declaration of Andrew Morrow, Vice President, Houlihan Lokey Howard Zukin Capital, Inc. In support of Debtors' Motion for Entry of an Order Authorizing the Debtors to Make Certain Payments Pursuant to the Asset Sale Incentive Program, filed on April. 11, 2008 [Docket No. 225] (the "Morrow Declaration").

24

29.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Selling Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

30.     Nothing in this Order or the APA approves or provides for the transfer to the Purchaser of any avoidance claims under chapter 5 of the Bankruptcy Code of the Selling Debtors' estates.

31.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

32.     There are no brokers for the Debtors involved in consummating the Sale and no brokers' commissions are due from the Debtors, except that the Debtors have retained Houlihan Lokey Howard & Zukin and the Debtors will pay Houlihan Lokey Howard & Zukin such fees as are approved by the Bankruptcy Court.

33.     The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APA be authorized and approved in its entirety.

34.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Selling Debtors' estates.

35.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Selling Debtors are a party or which has been assigned by the Selling Debtors to the

25

Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

36.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

37.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern.

38.     To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

Dated:  June 11, 2008
        Wilmington, Delaware

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge

26