IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUPPLEMENTS LT INC. (f/k/a LEINER HEALTH PRODUCTS INC.), et al.,[1] | ) ) ) | Case No. 08-10446 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## THE DEBTORS' JOINT PLAN OF
## LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (Bar No. 2981)
Daniel J. DeFranceschi (Bar No. 2732)
Jason M. Madron (Bar No. 4431)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701

**KIRKLAND & ELLIS LLP**
Richard M. Cieri
Paul M. Basta
Edward O. Sassower
Stephen E. Hessler
Brian S. Lennon
Citigroup Center
153 East 53rd Street
New York, New York 10022–4611
Telephone:      (212) 446–4800
Facsimile:      (212) 446–4900

Co-Counsel for the Debtors and Debtors in Possession

Dated:  August 21, 2008
        Wilmington, Delaware

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Supplements LT Inc. (1709), Supplements LT Services Corp. (7947), Supplements Liquidating Trust LLC (6283), and Supplements LT Holdings Corp. (4464).  The address for all Debtors is:  P.O. Box 811370, Los Angeles, CA 90081.

## TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ...................................................3
    A.    Defined Terms.................................................................................................3
    B.    Rules of Interpretation......................................................................................10
    C.    Exhibits ...........................................................................................................10

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS ...............................................................11
    A.    Administrative Claims .....................................................................................11
    B.    Priority Tax Claims .........................................................................................11
    C.    Other Priority Claims ......................................................................................11

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ....................11
    A.    Summary .........................................................................................................11
    B.    Classification and Treatment of Claims and Equity Interests ........................12
    C.    Special Provision Governing Unimpaired Claims ..........................................13
    D.    Non-Consensual Confirmation.........................................................................13

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................................13
    A.    Appointment of a Liquidating Trustee and a Liquidating Trust Committee....13
    B.    The LHP Liquidating Trust .............................................................................14
    C.    Rights and Powers of the Liquidating Trustee ...............................................14
    D.    Fees and Expenses of the LHP Liquidating Trust ..........................................14
    E.    Semi-Annual Reports to Be Filed by the LHP Liquidating Trust ..................15
    F.    Directors/Officers/Equity/Assets of the Debtors on the Effective Date. ........15
    G.    Liquidation of the Debtors...............................................................................15
    H.    Operations of the Debtors Between the Confirmation Date and the Effective Date ..................15
    I.    Exclusivity Period ...........................................................................................15
    J.    Establishment of the Administrative Bar Date ...............................................15
    K.    Term of Injunctions or Stays ...........................................................................16
    L.    Cancellation of Subordinated Notes and Equity Interests ..............................16
    M.    Creditors' Committee.......................................................................................16

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS..............................................................17
    A.    Initial Distribution Date ..................................................................................17
    B.    Disputed Reserves ...........................................................................................17
    C.    Quarterly Distributions....................................................................................17
    D.    Record Date for Distributions .........................................................................17
    E.    Delivery of Distributions.................................................................................18
    F.    Surrender of Canceled Instruments and Securities.........................................18
    G.    Lost, Stolen, Mutilated or Destroyed Instrument or Security.........................19
    H.    Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement ..........................19
    I.    Time Bar to Cash Payments by Check.............................................................19
    J.    Limitations on Funding of Disputed Reserves ...............................................19
    K.    Compliance with Tax Requirements ...............................................................20
    L.    No Payments of Fractional Dollars ................................................................20
    M.    Interest on Claims ...........................................................................................20
    N.    No Distribution in Excess of Allowed Amount of Claim ...............................20
    O.    Setoff and Recoupment ...................................................................................20

ARTICLE VI. DISPUTED CLAIMS ..............................................................................................20
    A.    No Distribution Pending Allowance ...............................................................20
    B.    Resolution of Disputed Claims. .......................................................................20

      C.      Objection Deadline.................................................................................21
      D.      Estimation of Claims..............................................................................21
      E.      Disallowance of Claims. .........................................................................21

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES..........................21
      A.      Rejection of Executory Contracts and Unexpired Leases .................................21
      B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases......................21

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE..........................................22
      A.      Conditions Precedent to the Effective Date.....................................................22

ARTICLE IX. RELEASE, INJUNCTIVE AND RELATED PROVISIONS...........................................22
      A.      Compromise and Settlement ....................................................................22
      B.      **Releases** ........................................................................................22
      C.      **Exculpation** ...................................................................................23
      D.      Preservation of Rights of Action.................................................................23
      E.      **Release and Injunction** ........................................................................24
      F.      **Releases of Liens**..............................................................................25

ARTICLE X. RETENTION OF JURISDICTION .................................................................25

ARTICLE XI. MISCELLANEOUS PROVISIONS ..............................................................26
      A.      Final Fee Applications ...........................................................................26
      B.      Release of Management Backstop ...............................................................26
      C.      Payment of Statutory Fees .......................................................................27
      D.      Modification of Plan .............................................................................27
      E.      Revocation of Plan ..............................................................................27
      F.      Successors and Assigns..........................................................................27
      G.      Governing Law...................................................................................27
      H.      Reservation of Rights ............................................................................27
      I.      Article 1146 Exemption .........................................................................27
      J.      Section 1125(e) Good Faith Compliance .......................................................28
      K.      Further Assurances...............................................................................28
      L.      Service of Documents ...........................................................................28
      M.      Filing of Additional Documents..................................................................28
      N.      No Stay of Confirmation Order ..................................................................28
      O.      Aid and Recognition .............................................................................29

## THE DEBTORS' JOINT PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, the Debtors and Debtors in Possession in the above-captioned and numbered cases hereby respectfully propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code.

### ARTICLE I.

### DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    *"APA"* means that certain Amended and Restated Asset Purchase Agreement By and Among NBTY, Acquisition, LLC, as Purchaser, NBTY, Inc., as Buyer Holdco, and Leiner Health Services Inc., Leiner Health Services Corp. and Leiner Health Products, LLC, as Sellers, dated as of June 9, 2008.

2.    *"Accrued Professional Compensation"* means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation: (a) success fees allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction); and (b) fees or expenses allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under Sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered prior to the Effective Date, or thereafter in connection with (x) applications Filed pursuant to Section 330 and 331 of the Bankruptcy Code and (y) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

3.    *"Administrative Bar Date"* means the first Business Day that is thirty (30) days after the Effective Date and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Expense in the manner indicated in Article II of the Plan.

4.    *"Administrative Claims"* means Claims that have been timely filed before the Administrative Bar Date, pursuant to the deadline and procedure set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Accrued Professional Compensation; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930; *provided, however,* that Administrative Claims that arise under section 503(b)(9) of the Bankruptcy Code shall only be deemed timely filed to the extent such Claims were filed in accordance with the terms of the Bar Date Order.

5.    *"Affiliate"* has the meaning set forth at Section 101(2) of the Bankruptcy Code.

6.    *"Allowed"* means, with respect to any Claim or Equity Interest, except as otherwise provided herein: (a) a Claim or Equity Interest that has been scheduled by the Debtors in their schedules of liabilities as other than disputed, contingent or unliquidated and as to which the Debtors or other parties-in-interest have not Filed an

objection by the Claims Objection Bar Date; (b) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (c) a Claim or Equity Interest that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (ii) in any stipulation with Debtors of amount and nature of Claim or Equity Interest executed on or after the entry of the Confirmation Order; or (iii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) a Claim or Equity Interest that is allowed pursuant to the terms hereof; or (e) a Disputed Claim as to which a proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

7.    *"Asset Sale Incentive Order"* means that certain Order Authorizing Debtors To Make Certain Payments Pursuant To 11 U.S.C. §§ 363(b) and 503(c)(3) Authorizing Debtors to Make Certain Payments Pursuant to Asset Sale Incentive Program, dated April 14, 2008 [Docket. No. 227].

8.    *"Asset Sale Incentive Program"* means the incentive program approved pursuant to the Asset Sale Incentive Order.

9.    *"Avoidance Actions"* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

10.    *"Bankruptcy Code"* means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Articles 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

11.    *"Bankruptcy Court"* means the United States District Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to Article 157 of title 28 of the United States Code and/or the General Order of the District Court pursuant to Article 151 of title 28 of the United States Code, the United States Bankruptcy Court for the District of Delaware.

12.    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

13.    *"Bar Date Order"* means the Order (A) Setting Bar Dates for Filing Proofs of Claim, (B) Approving the Form and Manner for Filing Proofs of Claim and (C) Approving Notice Thereof, dated April 7, 2008 [Docket No. 172].

14.    *"Beneficiaries"* means holders of Allowed Claims entitled to receive Distributions from the Liquidating Trust Fund under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

15.    *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Fed.R.Bankr.P. 9006(a)).

16.    *"Canceled Intercompany Claims"* means Intercompany Claims that are being canceled pursuant to the Plan.

17.    *"Cash"* means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

18. *"Cash Investment Yield"* means the net yield earned by the LHP Liquidating Trust from the investment of Cash held pending Distribution in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

19. *"Causes of Action"* means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other entities under the Bankruptcy Code, including Avoidance Actions) of any of the Debtors, the Debtors-in-Possession, and/or the Estates (including, without limitation, those actions set forth in the Plan Supplement) that are or may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date against any entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date.

20. *"Chapter 11 Cases"* means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date, which are jointly administered under case number 08-10446 (KJC), with the following case numbers: 08-10447 (KJC), 08-10448 (KJC) and 08-10449 (KJC).

21. *"Claim"* means a "claim" (as that term is defined in Section 101(5) of the Bankruptcy Code) against a Debtor.

22. *"Claims Objection Bar Date"* means the bar date for objecting to proofs of claim, which shall be one year after the Effective Date; *provided, however,* that the Liquidating Trustee may seek additional extensions of this date from the Bankruptcy Court.

23. *"Class"* means a category of holders of Claims or Equity Interests as set forth in Article III pursuant to Section 1122(a) of the Bankruptcy Code.

24. *"Closing Date"* means July 14, 2008, the date on which the Sale was finalized.

25. *"Confirmation Date"* means the date on which the Confirmation Order is entered by the Bankruptcy Court.

26. *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27. *"Creditors' Committee"* means the official committee of unsecured creditors for the Chapter 11 Cases appointed by the United States Trustee for the District of Delaware, pursuant to Section 1102 of the Bankruptcy Code, on March 19, 2008 [Docket No. 55].

28. *"Debtors"* or *"Debtors-in-Possession"* means, collectively, Supplements LT Inc. (f/k/a Leiner Health Products Inc.), Supplements LT Services Corp. (f/k/a Leiner Health Services Corp.), Supplements Liquidating Trust LLC (f/k/a Leiner Health Products, LLC) and Supplements LT Holdings Corp. (f/k/a LHP Holding Corp.).

29. *"DIP Agent"* means UBS AG, Stamford Branch, as administrative agent and collateral agent under the DIP Credit Agreement.

30. *"DIP Credit Agreement"* means, as amended, supplemented or modified from time to time, that certain Senior Secured, Super-Priority Debtor-In-Possession Credit Agreement, dated as of March 12, 2008, among Leiner Health Products Inc., Leiner Health Services Corp. and Leiner Health Products, LLC, as borrowers; LHP Holding Corp., VH Vita Holdings Inc., Vita Health Products Inc., Westcan Pharmaceuticals Ltd., 6062199 Canada Inc., as guarantors; the DIP Lenders thereto, as lenders; UBS Securities LLC and General Electric Capital Corporation, as joint lead arrangers; UBS Securities LLC, as sole book-runner and syndication agent; UBS Securities LLC, as documentation agent; UBS Loan Finance LLC, as swingline lender; and UBS AG, Stamford Branch, as issuing bank, as administrative agent for the DIP Lenders and as collateral agent.

31. *"DIP Facility"* means the Debtors' postpetition financing, which the Bankruptcy Court approved pursuant to the Final DIP Order.

32. *"DIP Facility Claims"* means any Claims of the DIP Lender arising out of the DIP Facility or DIP Credit Agreement. The Debtors repaid the DIP Facility Claims in full on the Closing Date.

33. *"DIP Lenders"* means, collectively, the lenders under the DIP Credit Agreement.

34. *"Disclosure Statement"* means the *Debtors' Disclosure Statement for the Joint Plan of Liquidation of Supplements LT Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated August 21, 2008 prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time.

35. *"Disclosure Statement Order"* means the proposed order approving the Disclosure Statement, which will be considered by the Bankruptcy Court on August 21, 2008.

36. *"Disputed"* means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which a Debtor or the Liquidating Trustee has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by a Debtor or Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

37. *"Disputed Reserve"* means the reserve fund created pursuant to Article V.B.1 of the Plan.

38. *"Distributions"* means the distributions of Cash and beneficial interest in the LHP Liquidating Trust to be made in accordance with the Plan and/or the Liquidating Trust Agreement.

39. *"Effective Date"* means the date selected by the Debtors that is a Business Day after the entry of the Confirmation Order on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.A have been satisfied or waived.

40. *"Encumbered Sale Proceeds"* means the Sale Proceeds less the Unencumbered Sale Proceeds.

41. *"Entity"* means an "entity" (as that term is defined in Section 101(15) of the Bankruptcy Code).

42. *"Equity Interest"* means any equity interest in a Debtor that existed immediately prior to the Petition Date, including, without limitation: (a) any common equity interest in a Debtor that existed immediately prior to the Petition Date, including, without limitation, all issued, unissued, authorized or outstanding shares of common stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests at any time; and (b) any preferred equity interest in a Debtor that existed immediately prior to the Petition Date, including, without limitation, all issued, unissued, authorized or outstanding shares of preferred stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests.

43. *"Equity Sponsors"* means, collectively, Golden Gate Private Equity, Inc. and North Castle Partners III-A, L.P. and their respective successors, assignees, etc.

44. *"Estate"* means the estate of each Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

45. *"Exculpated Parties"* means, collectively, the Debtors, the officers and directors of the Debtors as of the Closing Date, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the Creditors' Committee and the individual members thereof, the Subordinated Notes Indenture Trustee, the Liquidating Trustee, and each of their respective Representatives (each of the foregoing in its individual capacity as such).

46. *"File"* or *"Filed"* means, with respect to any pleading, entered on the docket of the Chapter 11 Cases and properly served in accordance with the Bankruptcy Rules.

6

47. *"Final DIP Order"* means the Final Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing Limited Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Liens and Super-Priority Claims and (IV) Granting Adequate Protection to the Prepetition Agents and Prepetition Lenders, entered by the Bankruptcy Court on April 10, 2008 [Docket No. 212].

48. *"Final Order"* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

49. *"General Bar Date"* means 5:00 p.m. prevailing Eastern time on June 16, 2008 as established in the Bar Date Order.

50. *"General Unsecured Claims"* means Claims against any Debtor that are not Administrative Claims, DIP Facility Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, Intercompany Claims or Equity Interests. In accordance with the terms of the Settlement, the General Unsecured Claims shall include the Subordinated Notes Claims.

51. *"Impaired"* means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

52. *"Initial Distribution Date"* means the date on which the LHP Liquidating Trust shall make its initial Distribution, which shall be a date selected by the Liquidating Trustee.

53. *"Intercompany Claims"* means Claims held by a Debtor or Affiliate of the Debtors against another Debtor or Affiliate of the Debtors, *provided, however,* that Intercompany Claims shall not include any Allowed Claims of the Debtors' Equity Sponsors.

54. *"LHP Liquidating Trust"* means the Entity described in Article IV.B that will succeed to all of the assets and liabilities of the Estates, subject to the terms of Plan, as of the Effective Date.

55. *"Liquidating Trust Agreement"* means that certain agreement establishing and delineating the terms and conditions of the LHP Liquidating Trust, substantially in the form to be filed as part of the Plan Supplement.

56. *"Liquidating Trust Committee"* means those individuals appointed in accordance with the Liquidating Trust Agreement with the powers and responsibilities set forth therein. The Liquidating Trust Committee shall consist of one representative appointed by the Debtors and not less than two representatives appointed by the Creditors' Committee.

57. *"Liquidating Trust Expenses"* means the reasonable fees and expenses of the Liquidating Trustee and the Liquidating Trust Committee, including, without limitation, reasonable professional fees.

58. *"Liquidating Trust Fund"* means the aggregate of (a) the Unsecured Claims Fund, (b) to the extent the Unsecured Claims Fund is less than $12 million, the Management Backstop and (c) the Causes of Action, including the Avoidance Actions, and the proceeds thereof.

59. *"Liquidating Trustee"* means the person appointed by the Debtors and Creditors' Committee in accordance with the Liquidating Trust Agreement to administer the LHP Liquidating Trust.

60. *"Management"* means those persons entitled to receive amounts under the Asset Sale Incentive Order.

61. *"Management Backstop"* means an amount not to exceed $8 million from the Asset Sale Incentive Program that Management will contribute to the Liquidating Trust Fund to the extent a shortfall exists between the Unsecured Claims Fund and $12 million for the exclusive benefit of holders of Allowed General Unsecured Claims or Management, as the case may be, in accordance with the following: (a) to the extent the Unsecured Claims Fund

is $4 million or less, the Management Backstop shall be $8 million; (b) to the extent the Unsecured Claims Fund is between $4 million and $12 million, the Management Backstop shall be an amount necessary to satisfy the difference between $12 million and the Unsecured Claims Fund; and (c) to the extent the Unsecured Claims Fund is greater than $12 million on the Effective Date or exceeds $12 million at any point during the claims reconciliation process, the Management Backstop shall be released immediately from escrow to Management.

62. *"NBTY"* means NBTY Acquisition, LLC.

63. *"Non-Acquired Assets"* means any property of the Debtors that is not transferred to NBTY pursuant to the APA, including certain Cash and Cash equivalents and prepaid deposits.

64. *"Other Priority Claims"* means Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

65. *"Other Secured Claims"* means Claims against the Debtors (other than the DIP Facility Claims and Secured Lender Claims) that are secured by a lien on property in which the Estates have an interest, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code.

66. *"Petition Date"* means March 10, 2008, the date on which the Debtors Filed the Chapter 11 Cases.

67. *"Plan Supplement"* means the compilation of documents and forms of documents, schedules and exhibits to the Plan.

68. *"Plan"* means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement, which is incorporated herein by reference.

69. *"Prepetition Agent"* means and includes the administrative agent and collateral agent under the Debtors' Senior Secured Credit Facility.

70. *"Priority Tax Claims"* means Claims of governmental units of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

71. *"Pro Rata"* means the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims in such Class.

72. *"Professional"* means any person or Entity employed pursuant to a Final Order in accordance with Sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

73. *"Quarterly Distribution Date"* means the first Business Day after the end of each quarterly calendar period (*i.e.*, March 31, June 30, September 30 and December 31 of each calendar year).

74. *"Ratable Proportion"* means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed and Disputed Claims in that Class.

75. *"Record Date"* means the record date for determining the entitlement of holders of Claims, except for holders of Subordinated Notes Claims, to receive Distributions under the Plan on account of Allowed Claims. The Record Date shall be the date on which the Disclosure Statement Order is entered.

76. *"Releasees"* means, collectively, the Debtors, officers and directors of the Debtors as of the Closing Date, the Liquidating Trustee, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the

Creditors' Committee and the individual members thereof, the Subordinated Notes Indenture Trustee and each of their respective Representatives (each of the foregoing in its individual capacity as such).

77. *"Releasing Parties"* means, collectively, holders of Claims voting to accept the Plan.

78. *"Representatives"* means, with regard to an Entity, officers, directors, employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, members and professionals).

79. *"Sale"* means the sale of all or substantially all of the Debtors' assets to NBTY pursuant to the APA.

80. *"Sale Order"* means the order of the Bankruptcy Court, entered in the Chapter 11 Cases, on June 11, 2008 [Docket No. 430], approving the APA and the transactions contemplated thereby.

81. *"Sale Proceeds"* means the Cash consideration received by the Debtors pursuant to the APA, including all Cash in escrow accounts established pursuant to the terms of the APA.

82. *"Schedules"* mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtors pursuant to Section 521 of the Bankruptcy Code.

83. *"Secured Lender Claim"* means the Claim Filed by the Prepetition Agent on account of Claims arising under the Senior Secured Credit Facility, which the Debtors and the Committee have agreed shall be Allowed in the amount of $285,538,106.60, plus the full amount of all out-of-pocket costs (including reasonable attorney and financial advisor fees of the Prepetition Agent and Prepetition Lenders that remain unpaid as of the Effective Date), pursuant to the Settlement Order. The Allowed Secured Lender Claim shall not include postpetition interest.

84. *"Secured Lender Deficiency Claim"* means the amount, if any, by which the Allowed Secured Lender Claim exceeds the Encumbered Sale Proceeds and the Non-Acquired Assets.

85. *"Senior Secured Credit Agreement"* means that certain credit agreement, dated as of May 27, 2004, by and among Leiner Health Products Inc., the guarantors party thereto, the lenders party thereto, and UBS Securities LLC as agent (as amended).

86. *"Senior Secured Credit Facility"* means that certain $290,000,000 senior secured credit facility issued pursuant to the Senior Secured Credit Agreement consisting of a term facility and revolving facility.

87. *"Senior Secured Lenders"* means, collectively, the lenders party to the Senior Secured Credit Agreement and their successors and assigns.

88. *"Settlement"* means the settlement proposed in the Settlement Motion, which was approved by the Bankruptcy Court on July 30, 2008.

89. *"Settlement Date"* means the date on which the Settlement Order became a Final Order.

90. *"Settlement Motion"* means the Joint Motion for Entry of an Order Approving Settlement Between Debtors, Official Committee of Unsecured Creditors and the Bank Group, dated July 10, 2008 [Docket No. 531].

91. *"Settlement Order"* means the Final Order granting the Settlement Motion.

92. *"Subclass"* means a subclass of a Class of Claims established pursuant to Article III.

93. *"Subordinated Notes"* means those certain 11.0% Senior Subordinated Notes due 2012, issued pursuant to the Subordinated Notes Indenture.

94. *"Subordinated Notes Claims"* means the Claims of the holders of the Subordinated Notes arising under the Subordinated Notes and the Subordinated Notes Indenture.

95. *"Subordinated Notes Indenture"* means that certain Indenture, dated as of May 27, 2004, by and among Leiner Health Products Inc., as issuer, Leiner Health Products, L.L.C. and Leiner Health Services Corp., as guarantors and U.S. Bank, National Association, as trustee, as supplemented by the Supplemental Indenture, dated as of May 27, 2004.

96. *"Subordinated Notes Indenture Trustee"* means the indenture trustee for the Subordinated Notes.

97. *"Subordinated Notes Indenture Trustee Fees"* means reasonable, postpetition, documented fees, disbursements, advances and expenses (including, without limitation, professional fees and expenses and payments made in connection with indemnity claims) of the Subordinated Notes Indenture Trustee payable under the Subordinated Notes Indenture (including, without limitation, in connection with service on the Creditors' Committee and in connection with Distributions under the Plan).

98. *"Unimpaired"* means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code.

99. *"Unencumbered Sale Proceeds"* means 35% of the Vita Value.

100. *"Unsecured Claims Fund"* means (a) the Unencumbered Sale Proceeds (less any amount necessary to satisfy the Secured Lender Deficiency Claim) and (b) any remaining Encumbered Sale Proceeds available for Distribution to holders of Allowed General Unsecured Claims after Distributions to the Prepetition Agent on account of the Allowed Secured Lender Claim and Distributions to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims.

101. *"U.S. Trustee"* means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the District of Delaware.

102. *"Vita Value"* means the value of the Debtors' non-debtor Canadian affiliates, which, as set forth in the Settlement Motion, the Debtors, the Prepetition Agent and the Creditors' Committee agree is $40 million.

B.    *Rules of Interpretation*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Fed.R.Bankr.P. 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

C.    *Exhibits*

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) ten (10) days prior to the commencement of the hearing on confirmation of the Plan and (ii) five (5) days prior to the deadline for filing objections to confirmation of the Plan. Such exhibits may be inspected in the office of the

10

Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtors by a written request sent to the following address:

> Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> Wilmington, Delaware 19801
> Attn.:  Jason M. Madron, Esq.

## ARTICLE II.

### ADMINISTRATIVE AND PRIORITY CLAIMS

A.    *Administrative Claims*

Subject to the provisions of Sections 328, 330(a) and 331 of the Bankruptcy Code, the Debtors or the LHP Liquidating Trust shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due); (3) at such time and upon such terms as may be agreed upon by such holder and the Debtors; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided, however*, that Administrative Claims do not include Administrative Claims Filed after the Administrative Bar Date or Administrative Claims Filed or asserted pursuant to section 503(b)(9) after the General Bar Date.

> 1.    Professional Compensation and Reimbursement Claims

The Bankruptcy Court shall fix in the Confirmation Order a date for filing of, and a date to hear and determine, all applications for final allowances of compensation or reimbursement of expenses under Section 330 of the Bankruptcy Code or applications for allowance of Administrative Expenses arising under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code.

B.    *Priority Tax Claims*

The Debtors or the Liquidating Trustee shall pay each holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

C.    *Other Priority Claims*

On or as soon as practicable after the Effective Date, the Debtors or the Liquidating Trustee shall pay each holder of an Allowed Other Priority Claim, in full and final satisfaction of such Allowed Other Priority Claim the full unpaid amount of such Allowed Other Priority Claim in Cash.

## ARTICLE III.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.    *Summary*

> 1.    This Plan constitutes a separate chapter 11 plan of liquidation for each Debtor.  Except for Administrative Claims, Priority Tax Claims and Other Priority Claims, all Claims against and Equity Interests in a particular Debtor are placed in Classes for each of the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims and Other Priority Claims, as described in Article II.

11

2.    The following table classifies Claims against and Equity Interests in each Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class is actually a group of Subclasses, one for each Debtor, and each Subclass is treated hereunder as a distinct Class for voting and Distribution purposes.

3.    *Summary of Classification and Treatment of Classified Claims and Equity Interests.*

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Secured Lender Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Canceled Intercompany Claims | Impaired | Deemed to Accept |
| 5 | Equity Interests | Impaired | Deemed to Reject |

B.    *Classification and Treatment of Claims and Equity Interests*

1.    *Secured Lender Claim (Class 1) (Subclasses 1.A-1.D)*

(a)    *Classification*: Class 1 consists of the Secured Lender Claim.

(b)    *Treatment*: On or as soon as practicable after the Effective Date and after giving effect to the Distributions made in accordance with the Settlement Order, the Debtors shall pay Cash from the Non-Acquired Assets and the Encumbered Sale Proceeds to the Prepetition Agent on behalf of the Prepetition Lenders in an amount necessary to satisfy the Allowed Secured Lender Claim in full. The Prepetition Agent shall distribute such Cash to the Prepetition Lenders pursuant to the terms of the Senior Secured Credit Agreement and related loan documents. To the extent the Non-Acquired Assets and Encumbered Sale Proceeds are not sufficient to satisfy the Allowed Secured Lender Claim in full in Cash, the Debtors shall use the Unencumbered Sale Proceeds and any other assets necessary to satisfy the Secured Lender Deficiency Claim in accordance with the terms of the Settlement Order. Under no circumstance shall the Allowed Secured Lender Claim include postpetition interest. Further, the Debtors shall not transfer any Cash or otherwise to the Liquidating Trust Fund until the Secured Lender Deficiency Claim is paid in full in Cash. The treatment afforded herein shall be in full and final satisfaction of the Allowed Secured Lender Claim.

(c)    *Voting*: Class 1 is Impaired, and the Prepetition Lenders are entitled to vote to accept or reject the Plan.

2.    *Other Secured Claims (Class 2) (Subclasses 2.A-2.D)*

(a)    *Classification*:  Class 2 consists of Other Secured Claims.

(b)    *Treatment*: The Debtors shall place each holder of an Allowed Other Secured Claim in a separate Subclass, and will treat each Subclass as a separate class for Distribution purposes. On or as soon as practicable after the Effective Date, the Debtors or the Liquidating Trustee shall pay each holder of an Allowed Other Secured Claim, in full and final satisfaction of such Allowed Other Secured Claim, except to the extent any holder of an Allowed Other Secured Claim agrees to a different treatment, either:

(i)    The collateral securing such Allowed Other Secured Claim; or

(ii)    Cash in an amount equal to the value of such collateral.

12

(c) *Voting*: Class 2 is Unimpaired, and holders of Other Secured Claims are conclusively deemed to have accepted the Plan. Only holders of Allowed Other Secured Claims shall receive a Distribution under the terms of the Plan.

3. *General Unsecured Claims (Class 3) (Subclasses 3.A-3.D)*

(a) *Classification*: Class 3 consists of General Unsecured Claims.

(b) *Treatment*: On or as soon as practicable after the Initial Distribution Date, the Liquidating Trustee shall pay each holder of an Allowed General Unsecured Claim, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of the Liquidating Trust Fund.

(c) *Voting*: Class 3 is Impaired, and holders of General Unsecured Claims are entitled to vote to accept or reject the Plan. For the purpose of clarity, only holders of Allowed General Unsecured Claims shall receive a Distribution under the Plan.

4. *Canceled Intercompany Claims (Class 4) (Subclasses 4.A-4.D)*

(a) *Classification*: Class 4 consists of Canceled Intercompany Claims.

(b) *Treatment*: Intercompany Claims shall be canceled, and holders of such Canceled Intercompany Claims shall receive no Distribution on account of such Claims.

(c) *Voting*: Notwithstanding the treatment of Canceled Intercompany Claims in Class 4, the holders of Canceled Intercompany Claims, by virtue of their status as Debtors or Affiliates of Debtors, are deemed to accept the Plan.

5. *Equity Interests (Class 5) (Subclasses 5.A-5.D)*

(a) *Classification:* Class 5 consists of Equity Interests.

(b) *Treatment:* Holders of Equity Interests shall neither receive nor retain any property under the Plan.

(c) *Voting:* Class 5 is Impaired, and holders of Equity Interests conclusively are deemed to reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.    *Non-Consensual Confirmation*

The Debtors reserve the right to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code. To the extent that any Class votes to reject the Plan, the Debtors further reserve the right to modify the Plan in accordance with Article XI.D.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Appointment of a Liquidating Trustee and a Liquidating Trust Committee.*

1. On or prior to the Confirmation Date, the Debtors and the Creditors' Committee shall agree upon and appoint a Liquidating Trustee. Additionally, on or prior to the Confirmation Date, the Debtors and the Creditors' Committee shall agree upon and appoint a three (3) member Liquidating Trust Committee, which shall consist of

13

one representative appointed by the Debtors and two members appointed by the Creditors' Committee. The Liquidating Trustee shall serve at the direction of the Liquidating Trust Committee, *provided, however*, the Liquidating Trust Committee may not direct the Liquidating Trustee or the members of the Liquidating Trust Committee to act inconsistently with their duties under the Liquidating Trust Agreement and the Plan. The Liquidating Trust Committee may terminate the Liquidating Trustee at any time in accordance with the provisions of the Liquidating Trust Agreement.

B.    *The LHP Liquidating Trust*

1.    Formation of the LHP Liquidating Trust

On the Effective Date, the LHP Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of (a) administering the Liquidating Trust Fund, (b) resolving all Disputed Claims, and (c) pursuing the Causes of Action, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The LHP Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d).

2.    Funding of the LHP Liquidating Trust

On the Effective Date, the Liquidating Trust Fund shall vest automatically in the LHP Liquidating Trust. The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief. The transfer of the Liquidating Trust Fund to the LHP Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets comprising the Liquidating Trust Fund will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the LHP Liquidating Trust in exchange for the beneficial interests in the LHP Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the LHP Liquidating Trust. Upon the transfer of the Liquidating Trust Fund, the LHP Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Fund, and the Debtors will have no further interest in or with respect to the Liquidating Trust Fund.

As soon as possible after the Effective Date, but in no event later than sixty (60) days thereafter, (i) the Liquidating Trust Committee shall inform the LHP Liquidating Trust in writing of the fair market value of the Liquidating Trust Fund as of the Effective Date, based on its good faith determination, and (ii) the Liquidating Trustee shall establish appropriate means to apprise the Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the LHP Liquidating Trust, the Beneficiaries and the Liquidating Trust Committee) for all federal income tax purposes.

C.    *Rights and Powers of the Liquidating Trustee*

The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules (including without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate any Non-Acquired Assets; (3) prosecute, settle, abandon or compromise any Causes of Action; (4) make Distributions contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; and (7) employ and compensate professionals and other agents, *provided, however*, that any such compensation shall be made only out of the Liquidating Trust Fund), to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

D.    *Fees and Expenses of the LHP Liquidating Trust*

Except as otherwise ordered by the Court, the Liquidating Trust Expenses on or after the Effective Date shall be paid in accordance with the LHP Liquidating Trust Agreement without further order of the Bankruptcy Court.

14

E.    *Semi-Annual Reports to Be Filed by the LHP Liquidating Trust*

The LHP Liquidating Trust shall File semi-annual reports regarding the liquidation or other administration of property comprising the Liquidating Trust Fund, the Distributions made by it and other matters required to be included in such report in accordance with the Liquidating Trust Agreement. In addition, the LHP Liquidating Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

F.    *Directors/Officers/Equity/Assets of the Debtors on the Effective Date.*

1.    On the Effective Date, the authority, power and incumbency of the persons then acting as directors and officers of the Debtors shall be terminated and such directors and officers shall be deemed to have resigned or to have been removed without cause, *provided, however*, that the Debtors shall retain at least one acting officer for the purposes of complying with Article IV.G.2 at the expense of the LHP Liquidating Trust.

2.    On the Effective Date, all the then Equity Interests in the Debtors (including all instruments evidencing such Equity Interests) shall be canceled and extinguished without further action under any applicable agreement, law, regulation or rule.

G.    *Liquidation of the Debtors*

1.    All of the Debtors shall be deemed to have been liquidated as of the Effective Date, and all Equity Interests in any Debtor shall automatically be canceled and extinguished as of the Effective Date without the need for any further action by the Court or any Entity.

2.    Notwithstanding the foregoing, as soon as practicable after the Effective Date, each of the Debtors shall: (a) file its certificate of dissolution, together with all other necessary corporate documents, to effect its dissolution under the applicable laws of its state of incorporation; and (b) complete and file its final federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws. The filing by each Debtor of its certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or the board of directors of each such Debtor.

3.    On the Effective Date, each Debtor shall assign, transfer and distribute to the LHP Liquidating Trust (a) any of its remaining assets, properties or interests; and (b) all of its books and records relating to the foregoing. For purposes of this Article, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of any Debtor maintained by or in the possession of third parties, wherever located.

H.    *Operations of the Debtors Between the Confirmation Date and the Effective Date*

The Debtors shall continue to operate as Debtors in Possession during the period from the Confirmation Date through and until the Effective Date.

I.    *Exclusivity Period*

Subject to further order of the Court, the Debtors shall, pursuant to section 1121 of the Bankruptcy Code, retain the exclusive right to amend the Plan, consistent with the terms of the Settlement, and solicit acceptances thereof until the later of November 30, 2008 or the Effective Date.

J.    *Establishment of the Administrative Bar Date*

1.    The Plan establishes the Administrative Bar Date, which was approved by the Bankruptcy Court pursuant to the Confirmation Order.

2.    Except as otherwise provided in this Article IV.J.4 of the Plan, on or before 5:00 p.m., prevailing Eastern time, on the Administrative Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court a request for payment of Administrative Claim (a) by mailing, hand delivering or delivering by courier service

15

such request for payment of Administrative Claim to the Clerk of the Bankruptcy Court at 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 or (ii) by using the Bankruptcy Court's CM/ECF electronic filing system.

3.    The request for payment of an Administrative Claim will be timely filed only if it is *actually received* by the Bankruptcy Court by 5:00 p.m., prevailing Eastern time, on the Administrative Bar Date.

4.    Notwithstanding anything in this Article IV.J.2 of the Plan, the Debtors' and the Creditors' Committee's professionals shall not be required to file a request for payment of any Administrative Claim on or before the Administrative Bar Date for fees and expenses arising under sections 330, 331 or 503(b)(2-5) of the Bankruptcy Code, as such Professionals will instead file final fee applications as required by the Bankruptcy Code, Bankruptcy Rules and the Confirmation Order.

K.    *Term of Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

L.    *Cancellation of Subordinated Notes and Equity Interests*

1.    On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates and other documents evidencing the Subordinated Notes Claims and Equity Interests shall be deemed automatically canceled, shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

2.    On the Effective Date, except to the extent otherwise provided herein, any indenture relating to any of the foregoing shall be deemed automatically canceled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and the obligations of the Debtors thereunder shall be discharged.

3.    As of the Effective Date, the transfer register or ledger maintained by the Subordinated Notes Indenture Trustee for the Subordinated Notes shall be closed, and there shall be no further changes in the record holders of any Subordinated Notes.

4.    Notwithstanding Articles IV.L.1 and IV.L.2, the Subordinated Notes and the Subordinated Notes Indenture shall continue in effect solely for purposes of (a) allowing the Subordinated Notes Indenture Trustee to receive Distributions under the Plan on behalf of the holders of the Subordinated Notes; (b) thereafter, allowing the Subordinated Notes Indenture Trustee to make Distributions to holders of the Subordinated Notes; and (c) permitting the Subordinated Notes Indenture Trustee to maintain any rights and liens it may have against property held or collected by the Subordinated Notes Indenture Trustee for reasonable fees, costs and expenses pursuant to the Subordinated Notes Indenture. The Subordinated Notes and the Subordinated Notes Indenture shall terminate completely upon completion of all Distributions by the Subordinated Notes Indenture Trustee to the holders of the Subordinated Notes.

5.    On or prior to the Effective Date, the Subordinated Notes Indenture Trustee shall submit to the Debtors and the Creditors' Committee its invoices for payment of the Subordinated Notes Indenture Trustee Fees. The Debtors or the Liquidating Trustee, as applicable, shall, as soon as practicable thereafter, reimburse the Subordinated Notes Indenture Trustee in Cash for the Subordinated Notes Indenture Trustee Fees; *provided, however,* that in exchange for such payment, the Subordinated Notes Indenture Trustee shall not assert a possessory lien for the same on any Distribution provided to and retained by the Subordinated Notes Indenture Trustee under the Plan on behalf of the holders of the Allowed Subordinated Notes Claims; *provided further, however,* that the Subordinated Notes Indenture Trustee reserves all other rights or arguments to payment other than asserting a possessory lien on any such Distribution, and nothing contained herein shall affect or diminish those rights.

M.    *Creditors' Committee*

As of the Effective Date, the Creditors' Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter

11 Cases. The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date, *provided, however,* that the Creditors' Committee shall exist, and its Professionals shall be retained, after such date with respect to (a) applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code and (b) motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

## ARTICLE V.

### PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Initial Distribution Date*

        On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the LHP Liquidating Trust shall make, or shall make adequate reserves for, the Distributions required to be made under the Plan.

B.      *Disputed Reserves*

        1.     Establishment of Disputed Reserves

        On the Initial Distribution Date, and after making all Distributions required to be made on such date under the Plan, the Liquidating Trustee shall establish a separate Disputed Reserve for Disputed Claims, each of which Disputed Reserves shall be administered by the Liquidating Trustee. The Liquidating Trustee shall reserve in Cash or other property, for Distribution on account of each Disputed Claim, the full asserted amount (or such lesser amount as may be estimated by the Court in accordance with Article VI.B hereof) with respect to each Disputed Claim.

        2.     Maintenance of Disputed Reserves

        To the extent that the property placed in a Disputed Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account.  The LHP Liquidating Trust shall hold property in the Disputed Reserves in trust for the benefit of the holders of Claims ultimately determined to be Allowed.  Each Disputed Reserve shall be closed and extinguished by the LHP Liquidating Trust when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan.  Upon closure of a Disputed Reserve, all Cash (including any Cash Investment Yield) or other property held in that Disputed Reserve shall revest in and become the property of the LHP Liquidating Trust.  All funds or other property that vest or revest in the LHP Liquidating Trust pursuant to this paragraph shall be (a) used to pay the fees and expenses of the LHP Liquidating Trust as and to the extent set forth in the Liquidating Trust Agreement, and (b) thereafter distributed on a Pro Rata basis to holders of Allowed Claims.

C.      *Quarterly Distributions*

        Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the LHP Liquidating Trust in a Disputed Reserve pursuant to Article V.B and Distributed (in full, in the case of Administrative Expense Claims, Priority Tax Claims, or Other Priority Claims; and up to its Ratable Proportion with respect to the Claims in Class 3) on the first Quarterly Distribution Date after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution paid on a Quarterly Distribution Date in accordance with this Article V.C.

D.      *Record Date for Distributions*

        Except as otherwise provided in a Final Order of the Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The LHP Liquidating Trust shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  In making any Distribution with respect to any Claim, the LHP Liquidating Trust shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of

17

business on the Record Date and upon such other evidence or record of transfer or assignment that are known to the LHP Liquidating Trust as of the Record Date.

E.    *Delivery of Distributions*

1.    General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the LHP Liquidating Trust at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (b) the last known address of such holder if no proof of Claim is Filed or if the Debtors have been notified in writing of a change of address. If any Distribution is returned as undeliverable, the LHP Liquidating Trust may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the LHP Liquidating Trust deems appropriate, but no Distribution to any holder shall be made unless and until the LHP Liquidating Trust has determined the then-current address of the holder, at which time the Distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable Distributions made by the LHP Liquidating Trust shall be returned to, and held in trust by, the LHP Liquidating Trust until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth below in Article V.E.3. The LHP Liquidating Trust shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however,* that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Liquidating Trust Agreement.

2.    Minimum Distributions

Notwithstanding anything herein to the contrary, if a Distribution to be made to a holder of an Allowed Claim on the Initial Distribution Date or any subsequent date for Distributions (other than the final Distribution Date) would be $50 or less in the aggregate, no such Distribution will be made to that holder unless a request therefor is made in writing to the Liquidating Trustee no later than twenty (20) days after the Effective Date.

3.    Unclaimed Property

Except with respect to property not Distributed because it is being held in a Disputed Reserve, Distributions that are not claimed by the expiration of one year from the Effective Date shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in the LHP Liquidating Trust, and the Claims with respect to which those Distributions are made shall be automatically canceled. After the expiration of that one-year period, the claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the LHP Liquidating Trust to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the LHP Liquidating Trust pursuant to this Article shall be distributed by the Liquidating Trustee to the other holders of Allowed Claims in accordance with the provisions of the Plan or the Liquidating Trust Agreement.

F.    *Surrender of Canceled Instruments and Securities*

1.    Generally

Except as set forth in Article V.G hereof, as a condition precedent to receiving any Distribution hereunder on account of an Allowed Claim evidenced by instruments, securities or other documentation canceled pursuant to Article IV.L hereof, the holder of such Claim shall tender such instrument, security or other documentation evidencing such Claim to the LHP Liquidating Trust (except as set forth in Article V.G hereof). Any Distributions pursuant to the Plan on account of any Claim evidenced by such instruments, securities or other documentation shall, pending such surrender, will be treated as an undeliverable Distribution in accordance with Article V.E hereof; *provided, however,* all notes, instruments and other securities issued under the Senior Secured Credit Facility shall be deemed terminated and canceled upon the Effective Date to the extent not already surrendered and canceled as part of the closing of the Sale; *provided, further, however,* that holders of the Subordinated notes shall tender the Subordinated Notes certificates representing the Subordinated Notes Claims to the Subordinated Notes Indenture Trustee. All payments to holders of Subordinated Notes Claims shall only be made after such surrender, or in the

event such certificate is lost, stolen, mutilated or destroyed, upon the holder's compliance with the requirements set forth in Article V.G. Upon surrender of such Subordinated Notes certificates, the Subordinated Notes Indenture Trustee shall cancel and destroy such Subordinated Notes. As soon as practicable after surrender of the Subordinated Notes certificates, the Subordinated Notes Indenture Trustee shall distribute to the holder thereof such holder's pro rata share of the Distribution, but subject to the rights of the Subordinated Notes Indenture Trustee to assert its charging lien to the extent the Subordinated Notes Indenture Trustee Fees are not paid pursuant to the Plan or any other rights or arguments to payment other than asserting its charging lien.

2.    Failure to Surrender Canceled Instruments

If any holder of an Allowed Claim evidenced by instruments, securities or other documentation canceled pursuant to Article IV.L hereof, fails to surrender such instrument, security or other documentation or comply with the provisions of Article V.F.1 hereof within one year after the Effective Date, its Claim for a Distribution under the Plan on account of such instrument, security, or other documentation shall be discharged, and such holder shall be forever barred from asserting such Claim against the LHP Liquidating Trust or its property. In such case, any property held on account of such Claim shall be disposed of pursuant to the provisions set forth in Article V.E.3 hereof.

G.    *Lost, Stolen, Mutilated or Destroyed Instrument or Security*

Any holder of an Allowed Claim evidenced by instruments, securities or other documentation canceled pursuant to Article IV.L hereof that has been lost, stolen, mutilated or destroyed, shall, in lieu of surrendering such instrument, security or documentation: (a) deliver to the LHP Liquidating Trust (or in the case of the Subordinated Notes, the Subordinated Notes Indenture Trustee) (i) an affidavit of loss reasonably satisfactory to the Liquidating Trustee (or in the case of the Subordinated Notes, the Subordinated Notes Indenture Trustee) setting forth the unavailability of such instrument, security, or other documentation and (ii) such additional security or indemnity as may reasonably be requested by the Liquidating Trustee to hold the LHP Liquidating Trust (or, in the case of the Subordinated Notes, required by the Subordinated Notes Indenture Trustee to hold the Subordinate Notes Indenture Trustee) harmless from any damages, liabilities, or costs incurred in treating such Entity as a holder of an Allowed Claim and (b) satisfy any other requirement under the Subordinated Notes Indenture or any other relevant document. Upon compliance with this Article V.G by a holder of an Allowed Claim evidenced by such instrument, security or other documentation, such holder shall, for all purposes under the Plan, be deemed to have surrendered such instrument, security or other documentation.

H.    *Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement*

Cash payments made pursuant to the Plan or the Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the LHP Liquidating Trust or by wire transfer from a domestic bank, at the option of the LHP Liquidating Trust.

I.    *Time Bar to Cash Payments by Check*

Checks issued by the LHP Liquidating Trust on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article V.I. shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the LHP Liquidating Trust as unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Article V.E.3.

J.    *Limitations on Funding of Disputed Reserves*

Except as expressly set forth in the Plan, neither the Debtors nor the Liquidating Trustee shall have any duty to fund the Disputed Reserves.

RLF1-3314252-1

K.    *Compliance with Tax Requirements*

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.E.1.

L.    *No Payments of Fractional Dollars*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

M.    *Interest on Claims*

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

N.    *No Distribution in Excess of Allowed Amount of Claim*

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

O.    *Setoff and Recoupment*

The LHP Liquidating Trust may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtors, the Estates or the LHP Liquidating Trust may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, or the LHP Liquidating Trust of any right of setoff or recoupment that any of them may have against the holder of any Claim.

**ARTICLE VI.**

**DISPUTED CLAIMS**

A.    *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.

B.    *Resolution of Disputed Claims.*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to the exclusion of all others (except as to the Professionals' applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make, File, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. The costs of pursuing the objections to Claims shall be borne by the LHP Liquidating Trust.

20

C.    *Objection Deadline*

All objections to Disputed Claims shall be Filed and served upon the holders of each such Claim not later than one year after the Effective Date, unless otherwise ordered by the Court after notice and a hearing.

D.    *Estimation of Claims*

At any time, (a) prior to the Effective Date, the Debtors, and (b) subsequent to the Effective Date, the Liquidating Trustee may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the LHP Liquidating Trust have previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the LHP Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.   Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court.

E.    *Disallowance of Claims.*

Except as otherwise agreed, any and all proofs of Claim Filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice or action, order or approval of the Bankruptcy Court, and holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

## ARTICLE VII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Rejection of Executory Contracts and Unexpired Leases*

1.    The Plan shall constitute a motion to reject such executory contracts and unexpired leases, and the Debtors shall have no further liability thereunder.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Claims created by the rejection of executory contracts and unexpired leases pursuant to Article VII.A of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Article VII.A for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article IX.E. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

## ARTICLE VIII.

### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.   *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.   The Confirmation Order has become a Final Order.

2.   The Confirmation Order shall be in full force and effect.

3.   Notwithstanding the foregoing, the Debtors reserve, in their sole discretion, the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent. Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### ARTICLE IX.

### RELEASE, INJUNCTIVE AND RELATED PROVISIONS

A.   *Compromise and Settlement*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Equity Interests.

B.   ***Releases***

1.   ***Releases by the Debtors.*** **Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation: (a) the discharge of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise; (b) the services of the Debtors' officers and directors in facilitating the expeditious implementation of the Sale or the liquidation; and (c) the Management Backstop, each of the Debtors hereby provides a full discharge and release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtors) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors or the Liquidating Trustee would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or Estates and further including those in any way related to the Chapter 11 Cases or the Plan; *provided, however*, that the foregoing provisions of this Article IX.B.1 shall not operate to waive or release from any Causes of Action expressly set forth in and preserved by the Plan or Plan Supplement or any defenses thereto; *provided, further*, that the foregoing provisions of this Article IX.B.1 shall not operate to waive or release any Causes of Action accrued by the Debtors in the ordinary course of business against holders of General Unsecured Claims.**

22

2. *Releases By Holders of Subordinated Notes.* **As of the Effective Date, each holder of the Subordinated Notes, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, or then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Subordinated Notes Indenture Trustee that such person or Entity has, had or may have, against the Subordinated Notes Indenture Trustee and any of its present or former directors, officers, employees, agents, representatives, attorneys, accountants, underwriters, investment bankers or financial advisors and any of their respective successors or assigns. This release, waiver and discharge shall be in addition to the release, exculpation and injunction provisions otherwise provided herein and under the Confirmation Order and the Bankruptcy Code.**

3. **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Debtors, the Liquidating Trustee or holders of Subordinated Notes asserting any Claim or Cause of Action thereby released.**

C.    *Exculpation*

**Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Entity for any and all Claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, Liquidating Trust Agreement, DIP Facility, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Settlement or the Sale or liquidation of the Debtors; *provided, however,* that the foregoing provisions of this Article IX.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided, further,* that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents; *provided, further,* that the foregoing provisions of this Article IX.C shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or Plan Supplement or any defenses thereto.**

D.    *Preservation of Rights of Action*

1.    *Vesting of Causes of Action*

(a) Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors may hold against any Entity shall vest upon the Effective Date in the LHP Liquidating Trust.

(b) Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

(c) Causes of Action and any recoveries therefrom shall remain the sole property of the LHP Liquidating Trust (for the sole benefit of the holders of General Unsecured Claims), as the case may be, and holders of Claims shall have no right to any such recovery.

RLF1-3314252-1

2. *Preservation of All Causes of Action Not Expressly Settled or Released*

(a) Unless a Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors and the Liquidating Trustee expressly reserve such Cause of Action for later adjudication by the Debtors or the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article IX.B.1) or any other Final Order (including the Confirmation Order).  In addition, the Debtors and Liquidating Trustee expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b) Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Liquidating Trustee have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent or unliquidated.

E.  **Release and Injunction**

1.  **From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Releasees, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.**

2.  **Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Releasees or their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.**

3.  **The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors or any of their assets or properties. On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.**

4.  **Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from:**

(a)  **commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors, their successors and assigns and their assets and properties;**

24

(b) **enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, their successors and assigns and their assets and properties;**

(c) **creating, perfecting or enforcing any encumbrance of any kind against any Debtor or the property or estate of any Debtor;**

(d) **asserting any right of setoff or subrogation of any kind against any obligation due from any Debtor or against the property or estate of any the Debtor, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of claim; or**

(e) **commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.**

F.    *Releases of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged (except for the charging lien of the Subordinated Notes Indenture Trustee to the extent the Subordinated Notes Indenture Trustee Fees are not paid pursuant to the Plan) and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors and the Liquidating Trustee.

## ARTICLE X.

### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.    resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XI.D adding executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

4.    ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date, *provided, however*, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

6.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

25

7.   resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.   issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.   enforce Article IX.A, Article IX.B and Article IX.C;

10.   enforce the Injunction set forth in Article IX.E;

11.   resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.   enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.   resolve any other matters that may arise in connection with or relate to the Settlement, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

14.   enter an order and/or the decree contemplated in Fed.R.Bankr.P. 3022 concluding the Chapter 11 Cases.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A.     *Final Fee Applications*

The deadline for submission by Professionals of applications for Bankruptcy Court approval of Accrued Professional Compensation shall be forty-five (45) days after the Effective Date.

B.     *Release of Management Backstop*

1.   The Management Backstop shall be released from escrow to Management on the Effective Date if there is at least $12 million in the Unsecured Claims Fund.

2.   To the extent the Unsecured Claims Fund is between $4 million and $12 million on the Effective Date, the Management Backstop shall be reduced to the amount necessary to fund the difference between $12 million and the amount available in the Unsecured Claims Fund. Any such reduction in the Management Backstop shall be released immediately from the escrow to Management.

3.   To the extent the Unsecured Claims Fund is less than $4 million on the Effective Date, the Management Backstop shall remain in escrow throughout the claims reconciliation process until the Unsecured Claims Fund equals (or exceeds) $12 million (including any Distributions made from the Unsecured Claims Fund) at which point the Management Backstop shall be released immediately to Management.

4.   To the extent the Unsecured Claims Fund is less than $12 million (including any Distributions made from the Unsecured Claims Fund) upon completion of the claims reconciliation process, the Management Backstop shall be released to the Liquidating Trustee to the extent necessary to fund the difference between $12 million and the Unsecured Claims Fund (including any Distributions already made from the Unsecured Claims Fund); *provided, however,* that the Management Backstop shall not exceed $8 million.  To the extent any amounts remain in the escrow account after any deficiency between $12 million and Unsecured Claims Fund (including any Distributions made from the Unsecured Claims Fund) is satisfied, such remaining amounts shall be released from escrow to Management immediately.

26

C.      *Payment of Statutory Fees*

All fees payable pursuant to Article 1930 of title 28 of the United States Code after the Effective Date, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid prior to the closing of the Chapter 11 Cases on the earlier of when due or the Effective Date, or as soon thereafter as practicable.

D.      *Modification of Plan*

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, after consultation with the Prepetition Agent and the Creditors' Committee, and consistent with the terms of the Settlement, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Liquidating Trustee, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

E.      *Revocation of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, after consultation with the Prepetition Agent and Creditors' Committee, and to file subsequent chapter 11 plans, consistent with the terms of the Settlement. If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

F.      *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

G.      *Governing Law*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Delaware, without giving effect to the principles of conflict of laws thereof.

H.      *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

I.      *Article 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

27

J.     *Section 1125(e) Good Faith Compliance*

The Debtors, the Creditors' Committee and its individual members, and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

K.     *Further Assurances*

The Debtors, Liquidating Trustee, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

L.     *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid as follows:

To the Debtors:

Supplements LT Inc.
PO Box 811370
Los Angeles, CA 90081
Attn.: Tae Rhee, Esq.

*with a copy to:*

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn.: Mark D. Collins, Esq.

Kirkland & Ellis LLP
153 East 53rd Street
New York, NY  10022
Attn.: Edward O. Sassower, Esq.

To the Creditors' Committee:

Lowenstein Sandler P.C.
65 Livingston Avenue
Roseland, New Jersey 07068-1791
Attn.: Sharon L. Levine, Esq.

M.     *Filing of Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

N.     *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Fed.R.Bankr.P. 3020(e) and 7062.

O.    *Aid and Recognition*

The Debtors or Liquidating Trustee, as the case may be, shall, as needed to effect the terms hereof, request the aid and recognition of any court or judicial, regulatory or administrative body in any province or territory of Canada or any other nation or state.

* * * * *

Dated: August 21, 2008
      Wilmington, Delaware

                    SUPPLEMENTS LT INC. (F/K/A LEINER HEALTH PRODUCTS INC.)

                    By:    /s/ Tae Rhee
                    Its:    President

                    SUPPLEMENTS LT SERVICES CORP. (F/K/A LEINER HEALTH SERVICES CORP.)

                    By:    /s/ Tae Rhee
                    Its:    President

                    SUPPLEMENTS LIQUIDATING TRUST LLC (F/K/A LHP HOLDING CORP.)

                    By:    /s/ Tae Rhee
                    Its:    President

                    SUPPLEMENTS LT HOLDINGS CORP. (F/K/A LEINER HEALTH PRODUCTS, LLC)

                    By:    /s/ Tae Rhee
                    Its:    President